UNITED STATES of America, Appellee,

v.

Almarita JONES, Appellant.

No. 80–1348.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1980.

Decided Sept. 12, 1980.

John Wesley Hall, Jr., Little Rock, Ark., for appellant.

George W. Proctor, U. S. Atty., Fletcher Jackson, Asst. U. S. Atty. and Michael Alexander, Legal Intern, Little Rock, Ark., for appellee.

Before HENLEY and McMILLIAN, Circuit Judges, and VAN PELT, District Judge.*

PER CURIAM.

* The Honorable Robert Van Pelt, United States Senior District Judge, District of Nebraska, sitting by designation.

Almarita Jones, an employee of a federally insured bank, was convicted by a jury for embezzling $300.00 from her employer in violation of 18 U.S.C. § 656. She received a three year suspended sentence and was placed on probation for three years. It is from this conviction and sentence that Jones appeals. We affirm.

Jones asserts in this court one ground for reversal, namely, that certain statements testified to during the course of her trial were obtained without the necessary *Miranda* warnings and that their admission was violative of her fifth amendment right against self–incrimination.

The statements forming the center of controversy in this case were made by Jones to two agents of the Federal Bureau of Investigation. On January 14, 1980 Donald Jarrett and Jody Cornwall, both FBI agents, went to the home of Jones to interview her concerning some money she was thought to have embezzled from her employer, Worthen Bank and Trust Company of Little Rock, Arkansas. Prior to the interview agent Cornwall had spoken with the Bank and Ida Mae Wright, the individual from whose account the money had been taken. Both the Bank and Ida Mae Wright had provided information strongly implicating Jones. One week after the interview Jones was indicted.

The stated purpose of interviewing Jones was to hear her side of the story and to gather any facts of which she might possess knowledge. At the time the questioning took place, Jones was the only potential suspect and certainly was the focus of the investigation.

Prior to questioning Jones the FBI agents identified themselves and informed her that she was not under arrest and was free to refuse to answer any questions she so desired. Jones was not given the warnings dictated by *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). She agreed to talk to the FBI agents in her home.

In response to the agents' initial questioning Jones told a story which the FBI agents informed her they did not believe. The agents also informed her that the grand jury would not believe the story either. Jones then changed her story and made incriminating statements. She testified that her incriminating statements were made because she wanted to tell the FBI agents what they wanted to hear and because they were not going to believe her initial story anyway. She further testified that, not knowing what a grand jury was, she did not know what to think when informed the grand jury would not believe her story.

At trial defense counsel objected to the admission of testimony of agents Jarrett and Cornwall concerning the incriminating statements made by Jones during the agents' interview at her home. Counsel objected on the grounds that the statements were procured in the course of a custodial interrogation and without the necessary *Miranda* warnings. The district court found that the interview of Jones was not a custodial interrogation requiring that *Miranda* warnings be given, and on that ground overruled defense counsel's objection and admitted the testimony into evidence.[1]

■ The warnings mandated by *Miranda* must be given only when there is a custodial interrogation. *Miranda v. Arizona*, 384 U.S. at 444, 86 S.Ct. at 1612; *South Dakota v. Long*, 465 F.2d 65, 71 (8th Cir. 1972), *cert. denied sub nom. Hale v. South Dakota*, 409 U.S. 1130, 93 S.Ct. 951, 35 L.Ed.2d 263 (1973). Without doubt, the present case involves an interrogation. *Compare Rhode Island v. Innis*, —— U.S. ——, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The critical question is whether the interrogation occurred in a custodial setting.

■ A person is in custody when he "[has been] deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. at 444, 86 S.Ct. at 1612. The place where an interrogation takes place does not conclusively establish the presence or absence of custody. A deprivation of freedom may take place at one's home as well as at the police station. *Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). By the same token, an interrogation at the police station may be noncustodial. *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *Iverson v. North Dakota*, 480 F.2d 414, 423 n.10 (8th Cir. 1973). Determining if there has been a deprivation of freedom entails something more than simply identifying the place of interrogation.

■ Just as the place of interrogation does not establish it as custodial, neither does the point in time at which the interrogation takes place. The fact that the investigation has proceeded to a point in time at which it may be said to have focused on the defendant does not make an interrogation of the defendant custodial. *Beckwith v. United States*, 425 U.S. 341, 345, 96 S.Ct. 1612, 1615, 48 L.Ed.2d 1 (1976); *United States v. Larson*, 612 F.2d 1301, 1304 (8th Cir.), *cert. denied*, —— U.S. ——, 100 S.Ct. 2154, 64 L.Ed.2d 789 (1980); *United States v. Jiminez*, 602 F.2d 139, 144 (7th Cir. 1979); *Borodine v. Douzanis*, 592 F.2d 1202, 1206 n.2 (1st Cir. 1979). Similarly, the fact that an interrogation occurs on the eve of indictment does not necessarily establish the interrogation as custodial.

While the foregoing factors may not be determinative, they are, of course, relevant in determining if there has been a "formal arrest or restraint on freedom of movement." *Oregon v. Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714.[2]

---

1. In its brief the government contends that the statements were used only for impeachment purposes. The ultimate decision of the trial court was not based on such a limited use of the evidence, and our opinion is based on the conclusion that the evidence was not so limited.

2. For a discussion of the relevancy of "focus," *see United States v. Jiminez*, 602 F.2d 139, 145 (7th Cir. 1979); *Iverson v. North Dakota*, 480 F.2d 414, 422 ·23 (8th Cir. 1973).

Returning to the facts of the present case, it becomes apparent that the interrogation of Jones was not custodial. We start with the fact that prior to any questioning Jones was informed that she was not under arrest and that she need not answer any questions. This communication to Jones reasonably should have allayed any fears she may have had that the FBI agents intended immediately to restrain her for questioning. The absence of a formal arrest and the advice of freedom to decline to answer, while not conclusive, are indicative of noncustodial interrogation. *See Oregon v. Mathiason*, 429 U.S. at 493, 97 S.Ct. at 713; *Beckwith v. United States*, 425 U.S. at 343, 96 S.Ct. at 1614; *United States v. Jiminez*, 602 F.2d at 143; *United States v. Micieli*, 594 F.2d 102, 106 (5th Cir. 1979); *accord Orozco v. Texas*, 394 U.S. at 325, 89 S.Ct. at 1096; *compare South Dakota v. Long*, 465 F.2d at 68.

It should not be understood, however, that the absence of a formal arrest and informing the suspect that she need not answer any questions automatically render an interrogation noncustodial. Other acts by those conducting the interrogation may establish custody. The record, however, is devoid of evidence exhibiting conduct on the part of the interrogating agents which would lead to the conclusion that Jones was in custody. No strong arm tactics were used. The defendant had not previously been subjected to a police escort nor given commands by the interrogating agents intended to dictate the course of conduct followed by the defendant. *Compare South Dakota v. Long*, 465 F.2d at 68. Jones could not "have reasonably believed that [she] was in custody." *Id.* at 70.

Jones points to alleged coercive questioning to show acts evidencing custody. Now it may be said that any official questioning may have some coercive aspects, and if the coercive aspects of the questioning are such as to overbear the free will of the defendant then the involuntariness of the statements may make them inadmissible. *United States v. Larson*, 612 F.2d at 1304 (relying on *Beckwith v. United States*, 425 U.S. at 348, 96 S.Ct. at 1617).

Here, the portion of the interview said to be coercive consists of the agents' statements to Jones that they did not believe the story she first told them and that the grand jury would not believe it either. Agent Jarrett swore that Jones then was asked to tell the truth and that thereafter she did so.

Recognizing that the appellant was youthful (age twenty–one) and may have been relatively inexperienced, still we cannot say that in the circumstances her free will was overborne by the agents' statements or by their admonition to tell the truth. The questioning was no more than routine. Appellant was in her own home and under no physical restraint. She was free to depart, free to refuse to answer any questions, and free to request the interrogating officers to leave. Jones was not compelled to be subjected to the presence of the interrogating officers. In short, she suffered no such restriction on her personal freedom as to render her "in custody." *Oregon v. Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714.

We are indebted to counsel for appellant for his able and persuasive brief. Nevertheless, we are convinced that the judgment of the district court must be, and it is, affirmed.