**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert Paul ALYEA,**
**Defendant-Appellant.**

**No. 80–1010.**

United States Court of Appeals,
Tenth Circuit.

Submitted Nov. 12, 1980.
Decided Dec. 30, 1980.

Hubert H. Bryant, U. S. Atty., and Kenneth P. Snoke, Asst. U. S. Atty., N. D. Okl., Tulsa, Okl., for plaintiff-appellee.

Thomas E. Salisbury, Tulsa, Okl., for defendant-appellant.

Before PICKETT, BARRETT and DOYLE, Circuit Judges.

PICKETT, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R. App.P., 34(a); Tenth Circuit R. 10(e)(3).

On trial to the court without a jury, Robert Paul Alyea was convicted on a three-count indictment charging him with violation of the United States postal laws. The first two counts alleged embezzlement of first class letters in violation of 18 U.S.C. § 1709. The third count charged that Alyea secreted and delayed 115 pieces of mail matter, in violation of 18 U.S.C. § 1703(a). After the conviction, the court dismissed the first two counts for technical reasons and sentenced Alyea to probation for a period of five years on the third count. The only question presented on appeal is whether the mail matter described in Count III was obtained from Alyea's automobile through an unconstitutional search and seizure by postal inspectors.

There is no dispute as to material facts. In June of 1979, Alyea was employed as a letter carrier by the United States Postal Service in the city of Tulsa, Oklahoma. For some time there had been reports of missing mail on the routes assigned to Alyea. Two postal inspectors from the Oklahoma City office were assigned to investigate. After their arrival in Tulsa, the inspectors posted a number of decoy or test letters in the mail or collection boxes which were serviced by Alyea. The inspectors kept Alyea under surveillance during the time that the mail was handled in the post office and upon the routes where the mail was to be delivered and pickups made by Alyea. From this surveillance they had reason to believe that Alyea had secreted some of the letters. Upon Alyea's return to the post office on the second day, one of the inspectors, together with the superintendent of the branch post office, asked him to accom-

pany them to the superintendent's office. Immediately after his arrival at the superintendent's office, in the presence of the superintendent and the two inspectors, Alyea was asked to empty the contents of his pockets onto a table. Alyea complied without objection. It was found that he had in his possession coins and currency which had been in some of the decoy letters. One of the inspectors then gave Alyea the *Miranda* warnings. Both inspectors testified that thereafter Alyea refused to comment further and stated that he desired to consult an attorney. One of the inspectors then told Alyea that he thought he had probable cause to obtain a warrant for the search of Alyea's automobile, which was parked on a nearby public street, and that he planned to take it into custody until a search warrant could be obtained. Alyea indicated that he did not want the car impounded, that he had no objection to its search, and executed a consent for that purpose.[1] Upon arrival at the car, one inspector opened the car door and asked Alyea the location of the mail matter. Alyea indicated that it was underneath the seat.

There was no evidence of threats or coercion of any kind. The evidence at the hearing on the motion to suppress is without conflict that during this period Alyea was never under arrest, was free to leave the meeting whenever he chose, and that his actions and statements were voluntary. On this record the trial court found that there was no showing of coercion or restraint, that the activities of the inspectors did not constitute an in-custody interrogation as defined in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and overruled the motion.

It is urged on appeal that, under the circumstances of this case, when Alyea was taken to the office of the station superintendent the action was equivalent to an arrest, and that the request to disclose the contents of his pockets before the *Miranda* warnings were given was a violation of his Fourth Amendment rights. It is further argued that after the *Miranda* warnings had been given, evidence procured by a search of his automobile was inadmissible.

In *Miranda v. Arizona, supra,* the Supreme Court held that evidence obtained from a suspect who has been taken into custody or deprived of his freedom of action in a significant way is inadmissible in a criminal action, unless it followed adequate warning of constitutional rights. The critical question in this case is whether Alyea had been taken into custody or was otherwise deprived of his freedom in any significant manner during the interrogation by the postal inspectors, including the seizure of mail in his automobile. The district judge found that Alyea was not in custody before or during the interview.

Since the *Miranda* decision, the question of what constitutes "in-custody interrogation" has often been considered by the United States Supreme Court and other courts. In *Beckwith v. United States,* 425 U.S. 341, 347, 348, 96 S.Ct. 1612, 1617, 48 L.Ed.2d 1 (1976), the Court, on facts somewhat similar to those in the instant case, said:

> We recognize, of course, that noncustodial interrogation might possibly in some situations, by virtue of some special circumstances, be characterized as one where "the behavior of . . . law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined. . . ." *Rogers v. Richmond,* 365 U.S. 534, 544 [81 S.Ct. 735, 741, 5 L.Ed.2d 760, 768] (1961). When such a claim is raised, it is the duty of an appellate court, including this Court, "to examine the entire record and make an independent determination of the ultimate issue of voluntariness." *Davis v. North Carolina,*

---

1. The CONSENT TO SEARCH reads:

   I hereby freely and voluntarily give my consent to officers of the Postal Inspection Service to conduct a search of my POA, 1979, AMC Spirit, OK Tag for evidence of mail.

   I understand that the officers have no search warrant authorizing this search, and that I have a constitutional right to refuse permission for them to conduct the search.

384 U.S. 737, 741–742 [86 S.Ct. 1761, 1764, 16 L.Ed.2d 895, 898] (1966). Proof that some kind of warnings were given or that none were given would be relevant evidence only on the issue of whether the questioning was in fact coercive. . . .

On consideration of a like question, the Court, in *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977), in reversing the Supreme Court of Oregon, stated:

> . . . Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited.

In a more recent significant decision concerning a consent search of the body of a female suspected of possession of narcotics at an airport in Detroit, Michigan, the Court, in *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), said:

> We adhere to the view that a person is "seized" only when by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interferences by enforcement officials with the privacy and personal security of individuals." *United States v.*

*Martinez-Fuerte*, 428 U.S. 543, 554 [96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116]. As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

In *United States v. Bridwell*, 583 F.2d 1135, 1138 (1978), this court said:

> . . . It is well settled that the *Miranda* warnings are required only when the suspect "has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694. The Supreme Court has elaborated on this requirement in *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (per curiam) and *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1. *Beckwith* is particularly relevant here because Bridwell argues he was the "focus of investigation" and was under "mental restraint," thereby fulfilling *Miranda's* in-custody requirement. *Beckwith* rejected both these arguments. 425 U.S. at 345, 96 S.Ct. 1612 [48 L.Ed.2d 1]. In this case Bridwell was questioned in his own office, was not under arrest, and no other indicia of coercion are apparent. *Beckwith v. United States, supra*. Accordingly, *Miranda* warnings were not required and the answers given by defendant were properly admitted at trial.

See also *United States v. Jones*, 630 F.2d 613 (8th Cir. 1980); *United States v. Turner*, 628 F.2d 461 (5th Cir. 1980); *United States v. Robinson*, 625 F.2d 1211 (5th Cir. 1980).

From an examination of the record as a whole, we conclude that it is ample to show that there was no in-custody questioning of Alyea, and that his consent to a search of his automobile was freely and voluntarily given. Consequently, there was no infringement of constitutional rights.

AFFIRMED.