UNITED STATES of America, Appellee,

v.

**Robert Earl PHILLIPS, Appellant.**

**No. 82–1494.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 1, 1982.

Decided Sept. 8, 1982.

---

6. *See United States v. Bissonette*, 586 F.2d 73, 77 (8th Cir. 1978).

Thomas E. Dittmeier, U. S. Atty., Robert T. Haar, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Daniel P. Finney, Jr., St. Louis, Mo., for appellant.

Before ROSS and McMILLIAN, Circuit Judges, and DAVIES,[*] Senior District Judge.

PER CURIAM.

Robert Earl Phillips appeals his conviction of aiding and abetting a wire fraud scheme to defraud Western Union Telegraph Company (Western Union) in violation of 18 U.S.C. §§ 2 and 1343 entered in the District Court[1] for the Eastern District of Missouri after a jury trial. For reversal Phillips argues that (1) there was insufficient evidence to support the verdict, and (2) the district court erred in denying his motion to suppress statements made prior to his arrest. For the reasons discussed below, we affirm the district court.

Western Union is engaged in the business of sending telegraphic money orders. Under the usual procedure, the individual requesting the money order goes to a Western Union agency, pays for the money order in cash and gives the Western Union agent a statement of the destination city and the name of the payee. The Western Union agency then calls the Western Union Central Telephone Bureau in Bridgeton, Missouri (Bridgeton Central), and gives the operator who answers the telephone the perti-

---

[*] The Honorable Ronald N. Davies, United States Senior District Judge for the District of North Dakota, sitting by designation.

1. The Honorable James H. Meredith, United States Senior District Judge for the Eastern District of Missouri.

nent information. This information is typed into a computer terminal by the operator and relayed through the main Western Union switching computer in Middletown, Virginia, to the destination city. Certain safeguards are built into the system to screen fraudulent money order transactions. The Western Union agent must give the operator his account number and the proper "bingo coordinates." "Bingo coordinates" and account numbers are provided by Western Union to all authorized Western Union agents. If the proper information is not typed into the computer, it will not transmit the money order.

On March 24, 1980, an operator at Bridgeton Central typed into the Western Union terminal the information that the Western Union agent in Elgin, Illinois, had received $2,000 from a Paul Phillips to be sent to Robert Phillips in St. Louis. The operator typed in the correct Elgin account numbers and its "bingo coordinates." Records of the Elgin office show, however, that no Paul Phillips made a cash deposit that day nor did a money order of that description originate in that office. In fact, the Elgin agency was closed at the time the money order was to have been sent.

At trial FBI Agent Douglas Dunnam testified as to the contents of three statements made by Phillips to Dunnam. According to Dunnam, Phillips told him that a week before the $2,000 money order was transmitted he had a conversation with a Jessie James Christian and his wife Vanessa. Christian told Phillips that Vanessa was an operator at Bridgeton Central and handled a lot of money. Christian speculated that Vanessa could send a money order to someone. There was discussion about the manner in which money orders were sent and a reference to "bingo numbers." According to Phillips, no specific plans were made at that time.

Dunnam further testified that Phillips told him that on March 25, 1980, Christian came to Phillips' house and they continued their previous conversation about money orders. Phillips stated that Christian told him that he [Christian] had had a money order sent to Phillips at Western Union's downtown office and that the two of them drove to the Chestnut Street office. Upon arrival Phillips entered the office but left when he saw a camera that could be used to photograph customers. On returning to the car, they discussed the camera. Finally, Christian went in and picked up two money order drafts, one for $2,000, the other for $200.

According to Phillips, he agreed to cash and did cash the $2,000 money order at First National Bank, where he had an account. Inside the bank he filled out a deposit slip for $300 and took the money order draft ($2,000) with the deposit slip to a teller who told him that a bank officer's approval was needed. After the bank officer's approval, $300 was deposited to Phillips' account; he retained an additional $300 and gave $1,400 to Christian. Phillips later cashed the $200 draft and turned over the proceeds to Christian.

■ On appeal Phillips argues that his act of cashing the money order was insufficient to convict him as an aider or abettor. Phillips asserts that the crime of wire fraud was complete at the moment Christian initiated the procedure necessary for transmission of a fraudulent money order. In support Phillips cites *United States v. Tackett,* 646 F.2d 1240 (8th Cir. 1981), for the proposition that success is not an essential element of wire fraud. Phillips reasons that because success is not an element, negotiation of the note was not part of the crime of wire fraud. Phillips analogizes these facts to *United States v. Varelli,* 407 F.2d 735 (7th Cir. 1969), *cert. denied,* 405 U.S. 1040, 92 S.Ct. 1311, 31 L.Ed.2d 581 (1972), in which the mere act of buying stolen goods was held not to constitute aiding and abetting of the theft of the goods.

Phillips' argument is without merit. Even assuming that the conversation between Christian and Phillips a week before the money order was sent did not give rise to an inference that Phillips assented to Christian's scheme before the interstate transmission, Phillips' acts of negotiating the money order drafts were still part of a

continuing scheme to defraud. *See United States v. Cohen*, 516 F.2d 1358, 1364 (8th Cir. 1975).

The Sixth Circuit rejected a similar argument in *United States v. Conte*, 349 F.2d 304 (6th Cir.), *cert. denied*, 382 U.S. 926, 86 S.Ct. 313, 15 L.Ed.2d 339 (1965). In that case, Conte argued that his only act was delivery of stolen bonds, an act which occurred after the use of wires and after the scheme had been devised. The court held that Conte's possession and delivery of the bonds was evidence from which a jury could infer participation in the scheme to defraud. That participation was enough to convict Conte of "at least" aiding and abetting. *Id.* at 306. We agree with the Sixth Circuit and conclude that actions taken after the scheme has been devised and after the wire transmission are sufficient to constitute aiding and abetting where, as here, the acts were an integral part of the fraudulent scheme.

Phillips' second argument is based on alleged violations of his fifth amendment rights. Phillips contends that the failure of FBI Agent Dunnam to give him warnings prior to two interviews violated the requirements imposed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (*Miranda*). Phillips was interviewed on June 2, 1980, and July 25, 1980, at his home. The district court found that Phillips was not in custody and therefore *Miranda* warnings were not required. We agree with the district court.

The warnings required by *Miranda* must be given only when there is a custodial interrogation. *Id.* at 444, 86 S.Ct. at 1612. The interviews here were clearly interrogations. Therefore, the critical question is whether the interrogation occurred when Phillips was in custody. This case is similar to *United States v. Jones*, 630 F.2d 613 (8th Cir. 1980) (*Jones*). In that case Jones, a suspect in a bank embezzlement, was interviewed at her home by FBI agents. At the time of the questioning, Jones was the "only potential suspect and certainly was the focus of the investigation." *Id.* at 614. Before her interrogation, Jones was informed that she need not answer any questions and after the interrogation she was not arrested. There was no evidence of conduct on the part of the agents which would lead to the conclusion that Jones was in custody, nor was there evidence of strong arm tactics. *Id.* at 616. This court held that Jones' statements were admissible. The only difference between the facts in *Jones* and the present case is the statement at the beginning of Jones' interrogation that she need not answer any question. The difference, while relevant, is not determinative. The record indicates that the FBI agents acted reasonably and fairly during Phillips' interrogations and that Phillips was in no way coerced into making the statements. As in *Jones*, Phillips was at his own home and under no physical restraint. He was free to depart, to refuse to answer questions, and to ask the interrogating officers to leave. He suffered no restrictions on his personal freedom which rendered him "in custody." *See Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977); *Jones*, 630 F.2d at 616. Because Phillips was not in custody, no *Miranda* warnings were required and his statements were properly admitted at trial.

The judgment of the district court is affirmed.