**UNITED STATES of America, Appellee,**

v.

**Jerry ROREX, Appellant.**

**Nos. 83–2288, 83–2289.**

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1984.

Decided June 27, 1984.

George W. Proctor, U.S. Atty., E.D. Ark., Kenneth F. Stoll, First Asst. U.S. Atty., Little Rock, Ark., for appellee.

Bill W. Bristow, P.A., Jonesboro, Ark., for appellant.

Before ROSS, JOHN R. GIBSON and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Jerry Rorex appeals from a conviction for knowingly possessing stolen property in violation of 18 U.S.C. § 659. Rorex contends that the District Court erred in overruling his motion to suppress certain statements made by him in response to questions asked by an FBI agent without giving the *Miranda* warnings. Rorex also alleges error in the District Court's failure to give an instruction proffered by him relating to standards between merchants under the Arkansas Uniform Commercial Code. As we find these contentions to be without merit, we affirm the conviction.

Rorex also appeals from the District Court's extension of his probation for a prior offense. This extension resulted in the imposition of a one-year sentence because of a probation violation found on the basis of the present conviction, which occurred during the extension. Rorex contends, and the government concedes, that the extension of probation violated Federal Rule of Criminal Procedure (FED.R. CRIM.P.) 32.1(b) in that the probation was extended in an *ex parte* proceeding. The District Court was clearly in error and,

accordingly, we reverse this probation extension.

## I. *Facts*

During the early hours of Saturday, July 24, 1981, a truck carrying a load of coffee from Houston, Texas to St. Louis, Missouri was stolen from the Malvern Truck Terminal in Malvern, Arkansas. The truck was stolen by Edward Giles, who delivered it that morning to Everett Walker. Giles accompanied Walker to the Big Star Food Market in Walnut Ridge, Arkansas, where part of the coffee was unloaded. The Walnut Ridge Big Star was owned by Rorex's brother and co-defendant Carroll Rorex. Giles and Walker then took the remainder of the coffee to the Big Star Food Market in Corning, Arkansas, which was owned by Rorex.

The FBI investigated the theft of the truck and developed information indicating that some of the stolen coffee might be in Rorex's store. On August 1, 1981, an FBI agent entered Rorex's store and purchased three cans of coffee. The cans of coffee purchased were of three brands not normally distributed in Arkansas. The FBI then presented this information to a U.S. magistrate and secured a search warrant for Rorex's store. This warrant was served on August 2, 1981, and a search of Rorex's store was conducted. At the time of the search, FBI agent Daro Downing met with Rorex in his office at the store and asked him some questions concerning the coffee. At the conclusion of the interview, Rorex and Downing took Rorex's car to Walnut Ridge and Rorex showed Downing where additional coffee was being kept. Rorex and Downing then parted company. During this time Agent Downing never gave any *Miranda* warnings to Rorex, nor was Rorex ever threatened with any charges or arrest in connection with the coffee.

Approximately nineteen months later on February 23, 1983, Rorex was indicted for knowingly possessing stolen property in violation of 18 U.S.C. § 659. On May 23, 1983, a suppression hearing was held to determine the admissibility of the state-

ments made by Rorex in response to Agent Downing's questions on August 2, 1981.

At the suppression hearing Agent Downing testified that no *Miranda* warnings were given to Rorex because the defendant was neither in custody nor the target of an investigation at that time. Moreover, at the conclusion of Agent Downing's encounter with Rorex that day, Rorex was free to go. The District Court concluded that at the time of the interview with Agent Downing, Rorex was neither in custody nor was he subject to the custodial pressures that were the chief reasons for the Supreme Court's establishment of the *Miranda* warnings. Accordingly, the District Court held that based on the totality of the circumstances of the interview, statements made by Rorex to Agent Downing were admissible.

At trial Rorex requested an instruction on the right of a buyer of goods to return those goods to the seller if the seller did not have title to the goods at the time of purchase. This instruction was based on the Arkansas version of the Uniform Commercial Code. The District Court refused this instruction. On August 9, 1983, Rorex was convicted of possessing stolen property. Rorex was sentenced to five years in prison for this offense.

This was not Rorex's first brush with the law. On September 30, 1977, following conviction, Rorex had been sentenced on a two-count indictment of conspiracy to sell and dispose of a stolen motor vehicle in violation of 18 U.S.C. §§ 371, 2313. He received two years of incarceration and four years of probation with the probationary period due to expire on April 5, 1983. As a result of Rorex's indictment for possessing stolen property, the District Court issued an *ex parte* order on March 30, 1983, extending the probationary period for the 1977 offenses for an additional year, until April 4, 1984.

On September 13, 1983, Rorex's probation was revoked on the basis of his conviction for possessing stolen property. He was sentenced to one year in prison, to run consecutively to the five-year sentence for possessing stolen property. These appeals followed.

## II. *Discussion*

### A. Agent Downing's Interview with Rorex.

Rorex contends that the District Court erred in its determination that the questions asked of him by Agent Downing on August 2, 1981 did not constitute custodial interrogation. Rorex argues that the circumstances of the interview placed custodial pressures on him, requiring that the agent give the *Miranda* warnings prior to attempting any questioning of the defendant. As evidence of this Rorex notes that at the time of the interview Agent Downing was accompanied by three other law enforcement officials who were removing two hundred cases of coffee from Rorex's store under a valid search warrant.

The warnings required by *Miranda* are required only in situations involving custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Custody occurs when a person is "deprived of his freedom of action in any significant way." *Id.* at 444, 86 S.Ct. at 1612. The location of the questioning, though relevant, is not necessarily determinative. For instance, a person may be deprived of freedom of movement in his or her own home. *Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). The fact that an investigation may be said to have focused on a particular person does not necessarily make questioning custodial. *See, e.g., Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976) (questioning by IRS agent during tax investigation held non-custodial); *United States v. Jones,* 630 F.2d 613 (8th Cir.1980) (questioning of defendant by FBI agents at her home held, on facts, not custodial). Thus, in order to determine what constitutes custody for purposes of requiring *Miranda* warnings prior to the questioning of an individual, one must look at the totality of the circumstances involved. Relevant factors include, but are not limited to: (1) the

scene of the interview, (2) the subjective intent of the officer in question, *i.e.*, did the officer intend to hold the individual in custody or to arrest him at the conclusion of the interview, (3) the age and experience of the person interviewed, and (4) the mode and manner of questioning, *i.e.*, was the design and tone of the questioning "such as to overbear the free will of the defendant." *Jones, supra,* at 616; *see United States v. Ackerman,* 704 F.2d 1344, 1349 (5th Cir.1983).

Here, the "totality of the circumstances" were aptly described in the District Court's findings of fact at the suppression hearing:

It is clear that the defendants[1] were not in custody, either real nor was the situation essentially coercive in any of the ways contemplated by the law. I do not find their freedom was substantially restricted in any way during or as a result of the interview.

It is clear that to me that the agents had an open mind about these particular people, the Rorexes particularly. And although they were suspicious of them and they were considered a suspect they were not satisfied as their guilt nor were they considered essentially a prime suspect.

. It was clear that the agents did not enter the interview with the intention of arresting the Rorexes, at the conclusion of it, nor did they actually come to the intention to arrest them during the course of the interview.... There were many potential explanations [for their possession of the coffee, some of] which would describe guilt[;] others [innocence.]

Suppression hearing transcript at 83–84. Accordingly, the District Court concluded that the interview with Rorex was conducted in a non-custodial setting.

■ We agree with the District Court's analysis. Agent Downing's manner was inquisitive, but not inquisitorial. The FBI's interest, at that point, was in locating the coffee first, and the culprits second. The following exchange between Agent Downing and the District Court at the suppression hearing sums up the attitude of Agent Downing towards Rorex at the time of the interview:

[Downing]: I had acquired knowledge or information that Mr. Rorex was in possession of some coffee at his store and was attempting to determine at that point of the interview primarily information as to whether he received the coffee and what his involvement in this matter was, if any.

THE COURT: In other words, before the interview you had no reason to believe one way or the other whether that possession that you had knowledge of was lawful or—guilty or not guilty, so to speak.

[Downing]: That's correct.

THE COURT: In other words he may have bought it through a third person. He may have come by it innocently. As far as you were concerned at that point, am I correct, you didn't know.

[Downing]: No, sir, I did not.

*Id.* at 42–43.

Apart from Agent Downing's subjective intent, moreover, Rorex was "on his own turf." This interview did not occur in the station house of *Miranda* or even the vacant office in the back of the bank building that was the scene of the interview in our recent decision in *United States v. Dockery,* 736 F.2d 1232 at 1233 (8th Cir. 1984) (en banc) (held not custodial interrogation), but rather in Rorex's office at his place of business. While it may be said that the search of Rorex's store added some coercive aspects, all official questioning, as the Supreme Court has noted, has some coercive aspects. *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). Indeed, the interview of Rorex was more clearly

---

1. Jerry Rorex and Carroll Rorex were tried together but only Jerry Rorex appealed his conviction.

non-coercive than that of the defendant in *Dockery, supra.* In that case, the interview was conducted not in familiar surroundings, similar to Rorex's office in his store, but in a bare room far from the interviewee's workstation. Agent Downing did not try to overbear the will of Rorex; he merely asked a few non-threatening questions concerning the coffee. He made no attempt to restrict Rorex's freedom of action. Rorex was not arrested until many months had passed following the interview in question. In these circumstances, the District Court's holding was within the bounds established by *Dockery* and *Jones, supra,* concerning situations in which *Miranda* warnings are not required prior to police questioning of an individual in connection with a criminal investigation.

B. The Requested Instruction on the UCC.

Rorex requested a jury instruction based on the Arkansas version of the Uniform Commercial Code (UCC) explaining the right of a buyer to return goods to the seller if they fail to conform to the contract of purchase. ARK.STAT.ANN. § 85–2–601. The instruction also stated that a warranty of good title is implied in every sale of goods under ARK.STAT.ANN. § 85–2–312, and that the buyer's right to return the goods is subject to a reasonable time restriction. ARK.STAT.ANN. § 85–2–602. The trial court refused to give this instruction.

■ Rorex contends that because his theory of the case was that he intended to return the goods to the seller once he became suspicious of their origin, this instruction and the applicable law on dealings between merchants should have been given to the jury to show that he had a basis for believing that he could escape responsibility by returning the goods. We do not agree. The applicable law in this case is not the Arkansas UCC, but 18 U.S.C. § 659. Under that statute the elements of the offense of possession of stolen property are: (1) the goods must be stolen; (2) the goods must have a value in excess of

$100; (3) the defendant must have possession of the stolen goods; (4) the goods must have traveled in interstate commerce; and (5) the defendant must know that the goods were stolen. *United States v. Henneberry,* 719 F.2d 941, 945 (8th Cir.1983), *cert. denied sub. nom. Youngerman v. United States,* — U.S. ——, 104 S.Ct. 1612, 80 L.Ed.2d 141 (1984). The statute makes no mention of any right to escape liability by returning the goods to the seller. Moreover, Rorex merely asserts that he intended to return the goods to the prior possessor; he made no attempt to find the true owner of the goods nor did he contact the police to report the stolen goods. The trial court was clearly correct in refusing to give the proposed UCC instruction. *See United States v. Richmond,* 700 F.2d 1183 (8th Cir.1983).

C. The Extension of Rorex's Probation.

■ On March 30, 1983, the District Court extended Rorex's probation from a prior conviction for conspiracy to sell and dispose of a stolen motor vehicle. The initial sentence called for two years imprisonment and four years of probation to commence upon Rorex's release from prison. These sentences were to have expired on April 5, 1983, but on March 30, 1983, the District Court issued an *ex parte* order extending the probationary period for one year. FED.R.CRIM.P. 32.1(b) states that a hearing with assistance of counsel is required before a modification of the terms and conditions of probation if the modification is adverse to the probationer. The government concedes that the District Court's action in modifying Rorex's probation in an *ex parte* proceeding plainly renders that extension invalid. This error is relevant here because on September 13, 1983, operating on the basis of its invalid prior extension of Rorex's probation, the District Court revoked Rorex's probation and imposed a one-year sentence as a result of the conviction in the instant case. Because of the invalidity of the District Court's action in extending Rorex's probation, Rorex's probationary period had ex-

pired on April 5, 1983, several months before he was convicted in the instant case on August 9, 1983. Therefore, the order of the District Court imposing the one-year sentence is vacated.

We have considered Rorex's other contentions and find them to be without merit. Rorex's conviction and sentence under 18 U.S.C. § 659 are affirmed. The order extending Rorex's probation and the later order imposing a one-year sentence for probation violation based on his conviction in the instant case are reversed.