UNITED STATES of America,
Plaintiff-Appellee,

v.

William WESTBO, Defendant-Appellant.

No. 84–1076
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 2, 1984.

Ronald J. Waska, Houston, Tex., for defendant-appellant.

James A. Rolfe, U.S. Atty., Jack C. Williamson, Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, GOLDBERG and RUBIN, Circuit Judges.

PER CURIAM.

William Westbo was convicted on one count of aiding and abetting a scheme to defraud by wire in violation of 18 U.S.C. §§ 1343 and 2. On appeal, we affirm the conviction.

### I.

The proof, viewed most favorably to the jury's verdict, showed the following. From April 1978 until September 1982, Curtis Hill, an unindicted co-defendant, perpetrated numerous frauds against financial lending institutions and insurance companies. Hill, with the aid of others, would create false documents for oil well drilling equipment he did not own and pledge such nonexistent property as collateral for loans. Similarly, Hill collected insurance proceeds on equipment he did not own or that did not exist by reporting such property stolen.

As part of his scheme, Hill used William Westbo as a trade reference to verify and supply allegedly false information to institutions which contacted Westbo to inquire about Hill's finances. Testimony established that when such institutions contacted Westbo, he was to verify that Hill's drilling company had done work for Westbo's engineering company and had additional future work with Westbo as well. The expectation of future income from a verification of continued work was expected to entice a lending institution to lend Hill money.

Ingersoll-Rand Financial Corporation was one of the institutions involved in Hill's fraudulent loan scheme. In 1980, Hill obtained a loan of $160,000 from Ingersoll-Rand to purchase a drilling rig. In connection with his loan application to Ingersoll-Rand, Hill submitted a phony contract for drilling work with Westbo.

Harvey Hirschfield of Ingersoll-Rand handled Hill's 1980 loan application. Hirschfield made numerous long distance telephone calls from Pennsylvania to Hill in Dallas regarding Hill's loan application. One of these calls was made on September 25, 1980.

In conducting a credit check of Hill, Hirschfield contacted Westbo. Hirschfield testified that this conversation with Westbo concerned Hill's reputation as a driller and the merits and value of the particular piece of equipment Hill would purchase using the Ingersoll-Rand loan. According to Hirschfield, and as reflected in a contemporaneously recorded credit write-up, Westbo stated that Hill had done drilling for Westbo's company for several years and was currently working on contracts which would last over a year and under which Hill would receive $700,000–$900,000. The credit write-up in which Hirschfield noted the substance of this conversation with Westbo was dated September 30, 1980. However, the exact date of Hirschfield's telephone call to Westbo was not indicated in the write-up, and no date was proven at trial.

Westbo was indicted for his involvement in aiding and abetting this scheme to defraud Ingersoll-Rand.[1] The first attempt to try this case ended in mistrial during the second day of testimony, due to improper statements made by Hill as a government witness. At the time of the mistrial the trial was reset for December 5, 1983, exactly two months from that date.

## II.

Westbo raises three issues on appeal. He argues there is insufficient evidence to support the conviction for aiding and abetting a fraud by wire. He further claims the court erred in refusing to grant a continuance while two of his three attorneys completed other trials. Finally, he asserts that the district judge disparaged and demeaned defense counsel in the jury's presence, thereby depriving him of due process and effective assistance of counsel in violation of the fifth and sixth amendments respectively. We find each of Westbo's contentions without merit.

Westbo was convicted of aiding and abetting Curtis Hill in a scheme to defraud Ingersoll-Rand by wire. In challenging the sufficiency of the evidence, Westbo contends that the count on which he was convicted specifically charged him with aiding and abetting Curtis Hill in causing a telephone call to be placed by Hirschfield to Hill on September 25, 1980. This call constituted wire fraud in violation of 18 U.S.C. § 1343[2] by contributing to the overall

---

**1.** Westbo was indicted along with three others in a fifteen count indictment. Only three of these counts implicated Westbo for aiding and abetting. Because Westbo was acquitted on two of these counts, we are concerned only with Count 9, the count upon which Westbo was convicted, which reads as follows:

> On or about September 25, 1980, in the Dallas Division of the Northern District of Texas, Curtis W. Hill, not named as a defendant herein, for the purpose of executing the aforesaid scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses and representations wilfully and knowingly caused telephone call to be made by wire in interstate commerce from Ingersoll-Rand Financial Corporation, King of Prussia, Pennsylvania to

Dal-Tex Drilling Company, Dallas, Texas, said telephone call pertaining to the financing by Ingersoll-Rand Financial Corporation of a 1979 Badger Drill Model 15M, Serial Number 8392.

> 2. ROY C. THACKER, DENNIS PRESLAR and WILLIAM WESTBO, defendants, did unlawfully, knowingly and wilfully aid, abet, counsel, command, induce and procure the commission of the offense set out above in this count.

> A violation of Title 18 U.S.C., Section 1343 and 2.

**2.** 18 U.S.C. § 1343 reads as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of

scheme to defraud. Westbo contends there was no evidence to show he knowingly and wilfully aided or abetted Hill in causing Hirschfield to place the September 25 call. Westbo contends that all the evidence indicates Westbo was not contacted by Hirschfield until *after* September 25. Thus, he contends there is no evidence to connect his intentional participation with the making of this phone call.

■ The government argues that the sequence and timing of the phone calls is immaterial, and we agree. Once membership in a scheme to defraud is established, a knowing participant is liable for any wire communication which subsequently takes place or which previously took place in connection with the scheme.

■ The crime of wire fraud did not come to an end at the moment Hill and Hirschfield terminated their telephone conversation on September 25. *See United States v. Phillips,* 688 F.2d 52, 54–55 (8th Cir.1982). We agree with both the Sixth and Eighth Circuits which have held that acts occurring *after* the use of the wires can be evidence from which a jury could infer participation in the scheme to defraud. Evidence of such participation is sufficient to convict of "at least" aiding and abetting. *Id.; United States v. Conte,* 349 F.2d 304, 306 (6th Cir.), *cert. denied,* 382 U.S. 926, 86 S.Ct. 313, 15 L.Ed.2d 339 (1965).

■ The jury could find that Westbo's act of verifying information to Hirschfield was part of the continuing scheme to defraud. *See Phillips,* 688 F.2d at 54–55. Until Ingersoll-Rand made the loan the scheme was not complete. Action taken after the scheme has been devised and after the wire transmission has occurred is sufficient to constitute aiding and abetting, where the action taken is integral to the fraudulent scheme. *Id.* at 55. In regard to his conversation with Westbo, Hirsch-

field testified that Westbo's comments generally supported their notion that Curtis Hill was a "good driller," (Record, vol. 7, p. 488), and hence, a financially satisfactory loan candidate.

To sustain a conviction for aiding and abetting, the evidence must show that Westbo was associated with the criminal venture, participated in it as something he wished to bring about, and sought by his action to make it succeed. *United States v. Martinez,* 555 F.2d 1269, 1272 (5th Cir. 1977). Thus, to sustain this conviction, the evidence and reasonable inferences therefrom must show Westbo knew that a fraud was occurring, that he associated himself with that fraud, that he participated in it with a desire that it be accomplished, and that he committed some overt act designed to make it a success. There was sufficient evidence to support a jury verdict on each of these issues.

■ In a conviction based on aiding and abetting, it is not necessary to prove the defendant had knowledge of the particular means by which the principal in the crime would carry out the criminal activity. *United States v. Diecidue,* 603 F.2d 535, 557 (5th Cir.1979). To aid and abet means to assist the perpetrator of the crime while sharing in the requisite intent. *Martinez,* 555 F.2d at 1271; *see also United States v. Longoria,* 569 F.2d 422, 425 (5th Cir.1978).

A recent Eleventh Circuit case on mail fraud is analogous to this case. Under the facts of *United States v. Johnson,* 700 F.2d 699 (11th Cir.1983), one count of a multicount indictment charged various individuals with causing a letter to be sent to the Georgia Department of Human Services containing false information on receipts and expenditures for child care services. The indictment alleged the letter had been mailed as part of the general scheme to defraud the government. The court held that when a defendant is proved to be a

---

false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures,

or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

participant in a scheme to defraud and a document is mailed in furtherance of the scheme, the defendant may be convicted of mail fraud, or at least of aiding or abetting the fraud, even if he did not personally mail the document.[3] These mail fraud rules are equally applicable to wire fraud.

Westbo's second issue on appeal concerns the denial of a continuance. On November 14, twenty-two days before re-trial was scheduled to begin, Westbo sought a continuance of the December trial date because two of his three retained counsel were scheduled to be involved in the trial of capital murder cases. The motion was denied. On December 2, Westbo again moved for continuance and/or severance due to his attorneys' involvement in these same capital murder cases. The motion was denied.[4] On December 7, after jury selection was completed, Westbo sought a third continuance, for two days, again, to permit two of three counsel to complete out-of-town capital murder trials. This motion for a two day continuance was also denied. Westbo claims that denial of this two day continuance was an abuse of discretion which denied him due process and effective assistance of counsel in violation of his fifth and sixth amendment rights, respectively.

■ Westbo claims he suffered substantial prejudice when the court forced his lead attorney to proceed to trial without co-counsel. In particular, Westbo claims prejudice from the fact that the remaining attorney had to cross examine Hill, the government's main witness. Westbo claims his counsel was unprepared for this task due to delegation of duties among the three retained counsel relating to the analysis of a voluminous amount of background material which included fourteen tape recordings. However, the record discloses that Hill's cross examination was thoroughly adequate to develop Westbo's defense. No prejudice is shown to have been suffered by Westbo. We find no abuse of discretion in denial of the continuance.

The continuance motion upon which Westbo focuses his principal attack is the third and final request for a two day extension of the trial date. Upon declaring a mistrial, the court immediately set a new trial date for December 5, a full two months distant. This supplied counsel with ample notice to rearrange any duty assignments so that those who could appear at trial would be fully prepared to proceed. Westbo's first request for a continuance was denied twenty-two days before re-trial would begin. Thus, for over three weeks Westbo's lead counsel knew that trial would begin on December 6 and that if other counsel continued to be otherwise committed he would be without co-counsel. Furthermore, this case was at trial two months before. A mistrial was declared during cross examination of Curtis Hill by Westbo's lead counsel. It was well within the district court's discretion to assume that lead counsel, ready then, would still be ready on December 8.

We note further that jury selection began on December 6, and actual testimony in the trial did not begin until December 8. The trial lasted seven days. Westbo's second attorney appeared two days after testimony began; the third appeared on the

---

**3.** *See also, United States v. Joyce,* 499 F.2d 9, 16 (7th Cir.) (a member of a mail fraud scheme is responsible for any letter which any other member of the scheme causes to be mailed in execution of the scheme), *cert. denied,* 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974); *Sherwood v. United States,* 300 F.2d 603, 605 (5th Cir.) (use of mails by fellow members of scheme may be attributed to defendant and render him guilty of mail fraud) *cert. denied,* 371 U.S. 838, 83 S.Ct. 65, 9 L.Ed.2d 74 (1962).

**4.** On November 9, the court rescheduled the trial from the 5th to the 6th of December to accommodate the government prosecutor who had previously been subpoenaed to testify in another trial. On December 6, the prosecutor was still under subpoena and unavailable. However, the trial judge elected to proceed with jury selection with a substitute government attorney. Actual testimony began on December 8 with the original prosecuting attorney in attendance. This one day change in the trial setting is immaterial to the ruling on Westbo's motion for continuance.

third day of testimony. Considering all these factors, we do not find that the trial judge abused his discretion by causing Westbo to go to trial with one attorney instead of three.

■ Westbo's third issue on appeal alleges that the trial judge directed demeaning and disparaging remarks towards defense attorneys, and that these remarks created an atmosphere so favorable to the government as to deprive Westbo of due process and effective assistance of counsel in violation of his fifth and sixth amendment rights respectively.

A review of the record discloses no remarks that can be characterized as anything other than statements properly made within the bounds of a judge's affirmative duty to facilitate the orderly progress of a trial. The admonishments and urgings of counsel by the trial judge in this case were in connection with evidentiary and procedural rulings and were directed toward moving the trial forward. They were not improper or unduly prejudicial. Any comments which could possibly be misconstrued were completely cured by the instruction which advised jurors not to draw adverse inferences from comments directed toward counsel.[5] Thus, viewing the record as a whole, we find Westbo's contention of improper judicial conduct without merit.

The judgment and conviction appealed from is

AFFIRMED.

---

5. The jury charge included the following instruction:

During the course of a trial I occasionally make comments to the lawyers, or ask questions of a witness, or admonish a witness or a lawyer. Do not assume from anything I may have said that I have intended to express an opinion concerning the issues in this case. Except for my instructions to you on the law, you should disregard anything I may have said during trial in arriving at your own findings as to the facts.