**UNITED STATES of America, Appellee,**

v.

**Charles Green LANIER, Appellant.**

No. 86–2550.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 27, 1987.

Decided Feb. 1, 1988.

R. David Freeze, Texarkana, Ark., for appellant.

Mark W. Webb, Asst. U.S. Atty., Fort Smith, Ark., for appellee.

Before McMILLIAN, FAGG, and BOWMAN, Circuit Judges.

PER CURIAM.

Charles Lanier appeals from a judgment of conviction entered by the District Court [1] upon a jury verdict finding him guilty of mail fraud, fraud involving interstate commerce, and aiding and abetting in violation of 18 U.S.C. §§ 1341, 2314, and 2.[*] For reversal, appellant contends that the District Court erred in (1) refusing to exclude statements taken from him by a postal inspector and (2) denying his motion for judgment of acquittal or for a new trial. We affirm.

## I. BACKGROUND

Appellant was indicted on April 11, 1986 on three counts of violating 18 U.S.C. §§ 2314 and 2 (fraud in interstate commerce; aiding and abetting), and eight counts of violating 18 U.S.C. §§ 1341 and 2 (mail fraud; aiding and abetting). Appellant and two co-defendants were tried together.

The evidence introduced at trial via the testimony of four victims revealed a

---

1. The Honorable Morris S. Arnold, United States District Judge for the Western District of Arkansas.

* Lanier's appeal was originally presented to us consolidated with the appeal of Danny McLane. McLane, who was convicted with Lanier of fraud in interstate commerce, mail fraud, and aiding and abetting, has withdrawn his appeal.

scheme whereby Lanier made contact with people seeking funds for businesses and other ventures. Lanier represented to these individuals that he could put them in contact with people who could negotiate no-payback loans in the amount of $100 million. Lanier traveled with some of the victims to Ohio to introduce them to Danny McLane, a supposed loan guarantor. Telephone and bank records introduced by the government also linked McLane and Lanier. Each individual seeking funds was required to deposit an advance fee of $25,000 to $50,000. McLane and Lanier represented orally, and in written agreements, that the advance fee would be placed in escrow and refunded, less authorized expenses, if the loan were not consummated or if the depositor requested a refund. However, no loans were ever provided, and no victim ever received a refund of his advance fee.

Postal Inspector Hasse testified, over Lanier's objection, that he had interviewed Lanier by telephone in December 1983 to confirm Lanier's involvement with an individual named Paul Havard. According to the testimony, Hasse told Lanier that Havard had given him Lanier's telephone number in connection with a loan scheme he (Hasse) was investigating. Hasse also testified that Lanier stated in the interview that he (Lanier) was attempting to secure a loan for Havard, that he was in contact with a possible source of funds on the West Coast and in Ohio, and that he had had about six telephone conversations with the Ohio source.

FBI Agent Payne interviewed Lanier on four occasions and testified that Lanier outlined the mechanics of the loan proposal whereby he and the other defendants offered $100 million loans for $25,000 front money. Payne further testified that Lanier stated that he had traveled both to California and Ohio in order to further the scheme and that he understood that he would be paid a one percent finder's fee, but that he had not received any money in connection with the loan proposal.

The District Court dismissed three of the counts prior to submission to the jury. The jury returned a verdict of guilty on seven of the eight counts submitted. The District Court denied appellant's post-trial motion for acquittal based on insufficiency of the evidence and for a new trial on the ground that the verdict was against the weight of the evidence. Lanier received concurrent two-year prison sentences, was placed on five years probation (to commence upon termination of the prison sentences), and was ordered to make restitution to the victims, pursuant to 18 U.S.C. § 3579, in the amount of $125,000 (Lanier is separately and jointly liable with his co-defendants at trial for this money, which is an amount equal to the advance fees paid by the victims). This timely appeal followed.

## II. DISCUSSION

### A. Sufficiency of the Evidence

When reviewing the District Court's decision denying appellant's motion for judgment of acquittal, we must examine the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences that may be drawn logically from the evidence. *United States v. Freitag,* 768 F.2d 240, 242 (8th Cir.1985). We note in that regard that the essential elements of a crime may be proven by circumstantial as well as direct evidence. *United States v. Hudson,* 717 F.2d 1211, 1213 (8th Cir.1983). Willfulness, intent, and guilty knowledge may also be proven by circumstantial evidence and frequently cannot be proven in any other way. *Id.*

#### 1. Mail Fraud

To establish a violation of 18 U.S. C. § 1341, the government must produce sufficient evidence for a jury to find that the defendant devised a scheme to defraud, that the defendant had specific intent, and that the mails were used for the purpose of executing the scheme. *United States v. Sedovic,* 679 F.2d 1233, 1237–38 (8th Cir. 1982).

Lanier argues that the evidence is insufficient to find him guilty of mail fraud. He maintains that the evidence only proves that he was an unknowing participant in a criminal venture, if a criminal venture ex-

isted at all. He points to one victim's testimony that he had never tried to hurt the victim and to the absence of evidence that he directly solicited or received money from any of the victims.

There is substantial evidence, however, that Lanier participated in the scheme with knowledge of its fraudulent elements, that he sought to further the scheme, and that the mails were used to execute the scheme. Each victim, as well as Hasse and FBI Agent Payne, testified that Lanier provided them with a detailed description of the loan scheme, which included representations about the refundability of the advance fee and about his connections with individuals who could make such loans. Thus, there is significant uncontradicted circumstantial evidence of Lanier's participation in the loan scheme. Moreover, as no expenses were accounted for, no money refunded, and no loans provided, the appellant's conduct suggests that he participated in the scheme as something he intended to further while knowing of its fraudulent nature. It was not necessary for the government to prove that Lanier originally devised the scheme; when Lanier knowingly participated in the misrepresentations he brought himself within the provisions of the statute. *See Sedovic*, 679 F.2d at 1238.

■ Lanier further argues that the evidence shows only that each victim used the mail voluntarily. However, one victim testified that Lanier put his advance-fee check and loan application papers into an envelope addressed to McLane, and that the victim received a letter from McLane, in care of Lanier, requesting that the loan papers be signed again. An FBI agent also testified that Lanier claimed to have sent one victim's check to McLane. This evidence permits a reasonable inference that the mails were used for the purpose of carrying out the loan scheme.

### 2. Fraud in Interstate Commerce

To establish a violation of 18 U.S.C. § 2314, the government must prove that the accused devised a scheme or artifice to defraud or obtain money by false pretenses or representations and caused or induced an intended victim to travel in interstate commerce with the intent to defraud that person of money or property having a value of $5,000 or more. *United States v. Edwards*, 516 F.2d 913, 913 (8th Cir.1975).

The first elements of sections 2314 and 1341 are identical, and the same evidence discussed above, *supra* p. 284, supports the jury's finding that Lanier intentionally engaged in a scheme to defraud under section 2314.

■ With regard to the second element of section 2314, Lanier maintains that the evidence demonstrates only that each victim used interstate commerce voluntarily. However, Lanier traveled with several of the victims to Ohio in order to introduce them to McLane. The evidence is sufficient to support an inference that Lanier induced others to travel in interstate commerce in order to further the loan scheme.

### 3. Aiding and Abetting

■ The elements of aiding and abetting are (1) that the defendant associated himself with the unlawful venture; (2) that he participated in it as something he wished to bring about; and (3) that he sought by his actions to make it succeed. *United States v. Sopczak*, 742 F.2d 1119, 1121–22 (8th Cir.1984). By traveling to Ohio and California, explaining the mechanics of the loan scheme to the victims, reassuring them about the refundability of their deposits, and sending loan applications and advance fees through the mail, Lanier associated himself with, participated in, and sought to further the loan scheme.

### B. Motion for a New Trial

Appellant contends that he is entitled to a new trial because the verdict is against the weight of the evidence.

■ When a motion for a new trial is made on the ground that the verdict is contrary to the weight of the evidence, the district court must weigh the evidence and evaluate the credibility of the witnesses, and will set aside the verdict only if the evidence weighs heavily enough against the verdict that a miscarriage of justice

may have occurred. *United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir.1987). The district court's decision will not be overturned absent a clear and manifest abuse of discretion. *Id.*

We believe that no such abuse exists here. Lanier makes no argument impugning the credibility of the witnesses. We do not believe that the overall evidence preponderates so heavily against the verdict that a miscarriage of justice may have occurred. Because we find no abuse of discretion, we decline to overturn the District Court's decision.

**C.  Admissibility of Hasse's Testimony**

Lanier argues that Hasse's testimony is not admissible because Hasse did not give him *Miranda* warnings prior to questioning. Lanier also argues that Hasse's testimony was evidence of other bad acts, and as such is not admissible under Fed.R.Evid. 404(b).

**1.  Miranda Warnings**

Appellant contends that because he was a suspect in Hasse's investigations at the time of the interview with Hasse, he was entitled to receive *Miranda* warnings prior to being questioned.

The mere focus of an investigation on an individual, without more, is insufficient to trigger a need for the warnings. *United States v. Jones*, 630 F.2d 613, 615 (8th Cir.1980). Rather, a reviewing court should consider the totality of the circumstances in determining whether the accused was subject to custodial interrogation. *United States v. Helmel*, 769 F.2d 1306, 1320 (8th Cir.1985). Relevant factors to consider in making the determination include the accused's freedom to leave the scene, and the purpose, place, and length of the interrogation. *Id.*

The circumstances under which the appellant was interviewed, as discussed above, *supra* p. 283, clearly indicate that

he was not in custody. The District Court properly refused to exclude Hasse's testimony on this ground.

**2.  Fed.R.Evid. 404(b)**

Under Fed.R.Evid. 404(b), evidence of other wrongs is not admissible to prove the defendant's bad character, but may be admissible for other purposes, such as proof of intent, knowledge, or plan. *See United States v. Pierce*, 792 F.2d 740, 743 (8th Cir.1986).[2]

The District Court admitted Hasse's testimony for the purpose of showing intent and a plan on the part of the appellant that encompassed both Paul Havard and the victims named in the indictment. Trial Transcript at 388. Lanier contends that this was error because Havard is not mentioned in the indictment.

Evidence of other wrongs is admissible if (1) an issue is raised on which evidence of other crimes may be received; (2) the evidence is relevant to that issue; (3) the evidence is clear and convincing; and (4) the probative worth outweighs any prejudicial impact. *United States v. Young*, 618 F.2d 1281, 1289 (8th Cir.), *cert. denied*, 449 U.S. 844, 101 S.Ct. 126, 66 L.Ed.2d 52 (1980). The trial court is vested with broad discretion in deciding whether to admit wrongful act evidence, and its decision to admit such evidence will be overturned only when the challenged evidence has no bearing on any issue involved. *Id.*

We believe that all of the standards for admission of Lanier's statements to Hasse under Rule 404(b) have been met and that the District Court did not abuse its discretion. At trial, Lanier raised the defense of lack of knowledge or intent to do wrong. Lanier's statements to Hasse during the interview are relevant to the issues of knowledge and plan because they reveal Lanier's version of his relationship with McLane, as well as his relationship

---

2.  Fed.R.Evid. 404(b) provides:
    Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible

for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

with Havard. Further, Lanier's other acts with regard to Havard are similar in kind to those crimes with which he was charged, and took place during the time period in which the indictment alleged that Lanier and the other defendants carried out the scheme. *See United States v. Gustafson*, 728 F.2d 1078, 1083 (8th Cir.) (evidence of wrongdoing "similar in kind and reasonably close in time to the charge at trial" was clear and convincing), *cert. denied*, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984).

The judgment of the District Court is affirmed.