UNITED STATES of America, Appellee,

v.

Russell L. LARSON, Appellant.

No. 79–1385.

United States Court of Appeals,
Eight Circuit.

Submitted Nov. 9, 1979.

Decided Jan. 4, 1980.

Rehearing Denied Jan. 28, 1980.

James Malcolm Williams, Minneapolis, Minn., for appellant.

Donald F. Paar, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Sheryl Ramstad Hvass, Asst. U. S. Atty., Minneapolis, Minn., on the brief.

Before GIBSON, Chief Judge, and ROSS and STEPHENSON, Circuit Judges.

FLOYD R. GIBSON, Chief Judge.

Russell Larson appeals his conviction pursuant to a jury verdict in the United States District Court for the District of Minnesota [1] finding him guilty on all counts of a six-count indictment. The indictment charged three counts of violating 26 U.S.C. § 7201 (1976) [2] by willfully evading income taxes for the years 1972, 1973, and 1974, and three counts of violating 26 U.S.C. § 7206(1) (1976) [3] by subscribing to materially false corporate income tax returns for the years 1972, 1973, and 1974. On appeal, Larson challenges numerous rulings of the trial judge, including those relating to a suppression motion, a motion to reveal the identity of an informant, denial of a hearing on the issue of discriminatory prosecution, and various evidentiary matters. Larson also contends that the trial court erred in not finding the willful evasion of income tax charges and the subscribing to materially false corporate return charges to be duplicitous. Finally, Larson appeals the trial judge's refusal to grant either a motion for judgment of acquittal or, in the alternative, a new trial. We affirm.

In February 1975, an unidentified informant contacted the Intelligence Division of the Internal Revenue Service in St. Paul, Minnesota, concerning a possible income tax evasion scheme at Polar Chevrolet, Inc. in White Bear Lake, Minnesota. The informant alerted an IRS special agent in the Intelligence Division to a scheme whereby Larson, president and majority stockholder of Polar Chevrolet, received kickbacks from advertising fees paid to Rodger Vogel, a

1. The Honorable Donald D. Alsop, United States District Judge, District of Minnesota.

2. 26 U.S.C. § 7201 (1976) provides:
 Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

3. 26 U.S.C. § 7206(1) (1976) provides:
 Any person who—

 (1) Declaration under penalties of perjury. —Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter;
 * * *
 shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution.

local television personality whose production firm did commercials for Polar Chevrolet. The special agent informed his group manager of the tipster's story. The group manager then referred the matter to the Audit Division, pursuant to the customary practice regarding information of that character. The group manager of the Audit Division, in his sole discretion, ordered an examination of the tax liability of Polar Chevrolet. IRS Revenue Agent Gary Koosman was instructed on September 8, 1975, to perform a civil audit of the 1972, 1973 and 1974 tax returns of Larson and Polar Chevrolet in order to determine their overall tax liability. Koosman's only contact with the Intelligence Division during this period was to talk with the special agent, who had spoken with the informant, concerning the content of the informant's information.

On November 17, 1975, Agent Koosman visited Polar Chevrolet to begin his audit of the corporate books. He subsequently met with Larson on November 25, 1975, and questioned Larson regarding payments from Polar Chevrolet to Vogel and payments from Vogel's production firm to Larson. On that same date Koosman determined that Larson's and Polar's returns were potentially fraudulent. On December 19, 1975, Koosman, after speaking with Vogel, referred the case to the Intelligence Division for criminal investigation. Larson was advised of his *Miranda* rights on April 22, 1976.

The evidence disclosed that Larson, in late 1971, had become engaged in a kickback or rebate scheme with Vogel and his production firm. The procedure utilized was for Vogel to submit two invoices, a correct invoice from his advertising firm to Polar Chevrolet, and another invoice inflating the correct charge. Larson then requested Vogel to write a check to Larson reflecting the difference between the original and the inflated invoice. This scheme continued through February 1974.

The kickback scheme even extended to using blank invoices when no services were involved. Vogel would simply write a check which accompanied an invoice with the term "rebated" written upon it. At trial, Vogel testified, in contravening statements made by Larson to Agent Koosman, that these payments were neither referral fees from Larson nor loans to Larson. Larson also diverted checks made payable to Polar Chevrolet to his own personal account during the period of the rebate scheme. These checks involved payments received from leases of trucks, automotive parts repayments and refunds from an advertising firm.

The kickback scheme plus the check diversions resulted, during the taxable years 1972 through 1974, in the underreporting of Polar Chevrolet's corporate income by $57,434 and Larson's personal income by $44,191. A local certified public accountant prepared the returns involved and testified that they were based on information supplied to him by Larson and Polar Chevrolet. Larson signed both his own and the corporation's returns.

Larson was indicted on August 14, 1978. On October 19, 1978, the trial judge denied Larson's motion to require disclosure of the identity of the informant. On January 15, 1979, the trial judge granted Larson's motion for a suppression hearing and denied his motion to dismiss the indictment and to hold an evidentiary hearing on the issue of selective prosecution. After the suppression hearing, the trial judge on January 23 ordered suppressed any statements made by Larson or documents obtained from him after November 25, 1975, the date of the meeting between Agent Koosman and Larson, and before April 22, 1976, when Larson was informed of his *Miranda* rights. Jury trial commenced on January 23, 1979. On January 31 the jury found Larson guilty on all six counts of the indictment. Larson was sentenced on May 3, 1979, to two years on each count to be served concurrently.

*Pretrial motions*

 Larson contends that the IRS should have been compelled to disclose the identity of the informant who tipped the special agent in the Intelligence Division to Larson's tax evasion scheme. In *United*

*States v. Weir*, 575 F.2d 668, 673 (8th Cir. 1978), we held that "a court should not require disclosure of an informant's identity unless the disclosure is vital to a fair trial." The privilege against disclosing the identity of an informer balances the public interest in effective law enforcement with the fundamental requirement of fairness to the defendant. *United States v. Hurse*, 453 F.2d 128, 130 (8th Cir. 1972). Here, the IRS's need for information concerning tax evasion outweighs any claimed prejudice by Larson. We agree with the trial court's finding that the identity of the informant was not relevant or helpful to the defense nor essential to a fair determination of the issues. *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In particular, we note that the two days of pretrial hearings, during which extensive testimony and documentation were presented, reveal that the identity of the tipster was irrelevant to determining when the investigation began to focus on possible criminal activity by Larson.

 Larson next argues that all evidence obtained prior to when he was read his *Miranda* rights should be suppressed because the civil audit of his taxes was a disguised criminal investigation. Preliminarily, we note that *Miranda* warnings are not necessary in interviews with IRS agents concerning tax liability when the subject is not in custody, even though the "focus" of the investigation has centered upon the taxpayer. *Beckwith v. United States*, 425 U.S. 341, 347, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976). *Miranda* warnings are not generally required even when the investigating IRS division is one which deals primarily with criminal fraud. *Id.* at 345, 96 S.Ct. 1612. As noted in *Beckwith*, 425 U.S. at 348, 96 S.Ct. at 1617, only when a noncustodial investigation might possibly "be characterized as one where 'the behavior of . . . law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined . . . '" does this court have a duty to make an independent determination of the ultimate issue of voluntariness. We followed this rationale in *United States v.*

*Vannelli*, 595 F.2d 402, 406 (8th Cir. 1979) holding: "Statements made by a taxpayer to Internal Revenue agents during the course of a noncustodial interview in a criminal tax investigation are admissible even though [the] taxpayer was not given the warnings required by *Miranda*." Larson was not subjected to coercion. His argument that he was misled by the characterization of the investigation as civil is unsupported by the evidence. Our examination of the record fails to disclose that prior to November 25, 1975, Larson was in any way misled by the IRS or Agent Koosman as to the nature of the investigation of his taxes. The examination and audit of Larson's taxes were essentially civil in nature prior to Agent Koosman's meeting with Larson on the 25th. As a matter of fairness and due process, tips or information volunteered on possible criminal activity should be screened and probed for validity and substance before embarking on a criminal investigation. The trial court did not err in denying the motion to suppress.

 Larson also contends that the trial court erred in denying his request for a pretrial evidentiary hearing on discriminatory prosecution. The trial court, in ruling on the motion, found the "record devoid of any evidence sufficient to require a hearing on the issue of discriminatory prosecution." In order to establish the essential elements of a prima facie case of selective discrimination, Larson must first demonstrate that he has been singled out for prosecution while others similarly situated have not been prosecuted for conduct similar to that for which he was prosecuted. He made no showing to this effect. Second, Larson must demonstrate that the Government's discriminatory selection of him for prosecution was based upon an impermissible ground, such as race, religion, or his exercise of his first amendment right to free speech. Again, no relevant showing was made. Larson has failed to meet the two-prong test of "intentional and purposeful discrimination" set forth in *United States v. Swanson*, 509 F.2d 1205, 1208–09 (8th Cir. 1975). A hearing is necessary only when

the motion alleges sufficient facts to take the question past the frivolous state and raises a reasonable doubt as to the prosecutor's purpose. *United States v. Catlett,* 584 F.2d 864, 866 (8th Cir. 1978). Larson's allegations of selective prosecution were meritless; the trial court did not err in denying a hearing.

■■ Larson filed a pretrial motion to dismiss and a post-trial arrest-of-judgment motion on the basis that one sum of unreported money by Larson cannot give rise to both evasion of personal income tax charges, 26 U.S.C. § 7201, and subscribing to materially false corporate income tax returns charges, 26 U.S.C. § 7206(1). Despite a cogent explanation by the trial judge, Larson still fails to understand that the signing of a false corporate return and the evasion of personal income taxes are two distinct crimes. *See United States v. Lodwick,* 410 F.2d 1202, 1205–06 (8th Cir.), *cert. denied,* 396 U.S. 841, 90 S.Ct. 105, 24 L.Ed.2d 92 (1969). The rebate scheme involved excessive corporate deductions coupled with additional unreported personal income to Larson. The diverted checks resulted in business income to the corporation which went unreported due to Larson's misappropriation to his own personal accounts, which sum also was not reported in his personal returns. Larson wilfully caused a substantial understatement of Polar's income tax liability and failed to report a substantial share of his personal income.

*Discretionary trial rulings*

Larson alleges numerous errors by the trial court relating to its manner of dealing with defense objections, rulings on motions, comments made by the court during trial regarding the conduct of the defense, instructions to the jury, the reading of the instructions to the jury, handling the jury deliberations, and the sentencing procedure. We find all of these contentions to be meritless. The trial judge dealt fairly and judiciously with all of Larson's motions, and also displayed admirable patience and restraint when confronted with the plethora of frivolous objections raised by Larson's

attorney. The quality of a defense attorney is not related to the quantity of his objections and disruptions. The trial court did not abuse its discretion in its conduct of the trial or sentencing procedure.

*Post-trial motions*

■ Larson filed post-trial motions for acquittal and, in the alternative, for a new trial. The trial court denied both, finding that when the evidence is viewed in the light most favorable to the Government, *see United States v. Hemphill,* 544 F.2d 341, 344 (8th Cir. 1976), *cert. denied,* 430 U.S. 967, 97 S.Ct. 1648, 52 L.Ed.2d 358 (1977), "[t]he evidence at trial was sufficient for the jury to find beyond a reasonable doubt the defendant guilty as charged in each count of the indictment." We agree. The evidence clearly established that Larson voluntarily and intentionally evaded personal income tax liability and subscribed to false corporate returns for Polar Chevrolet, Inc. for the years 1972, 1973, and 1974. Larson failed to report roughly half of his income during those years. A consistent pattern of understatement of income may be used to establish the essential inference of wilfulness. *United States v. Vannelli,* 595 F.2d at 405. Larson, however, went beyond mere nonreporting; he developed both a rebate and check diversion scheme to enhance his own personal income at the expense of both the Government and Polar Chevrolet. Larson was in the car business for twenty years. He knew the rebate and check diversion schemes were fraudulent.

Larson was afforded a fair trial. The jury's verdict was amply supported by the evidence. The post-trial motions for acquittal and for a new trial were properly denied.

Affirmed.