765 F.2d 147
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
CARL LEE WORTMAN, DEFENDANT-APPELLANT.
 NO. 84-3757
 United States Court of Appeals, Sixth Circuit.
 5/29/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 BEFORE: MERRITT, CONTIE and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Carl Lee Wortman appeals from a jury verdict for conspiring to possess unregistered firearms in violation of 18 U.S.C. Sec. 371 and 26 U.S.C. Sec. 5861(d).
 
 
 2
 The government had previously tried Wortman (and also an alleged compatriot) twice on the same indictment before the same trial judge. The original charge consisted of the conspiracy count as well as ten substantive counts of possession of unregistered firearms. After the first trial ended in a hung jury, the district court declared a mistrial.[1] After a second trial, Wortman was found not guilty on nine of the ten substantive counts. The jury could not agree on the one remaining substantive count and the conspiracy count. The district court declared another mistrial as to these remaining counts. At the third trial, with which the appeal is concerned, the government elected to proceed on the conspiracy count only.
 
 
 3
 Wortman challenges this third trial and his conviction on two grounds. First, he alleges that the government engaged in a constitutionally impermissible form of selective prosecution by trying him on the conspiracy charge after two mistrials. He contends in this regard that the district court erred in refusing to hold a special evidentiary hearing for the government to explain its motivation in pursuing this third prosecution. Second, Wortman alleges that the jury's action in finding him not guilty on nine of the substantive counts should have precluded the use of certain evidence about his supposed firearm possession in connection with the conspiracy charge at the third trial. He argues that the court should have invoked the doctrine of collateral estoppel to prevent the government's introduction of this disputed evidence.
 
 I. SELECTIVE PROSECUTION
 
 4
 Wortman contends that the government's decision to keep prosecuting him was based on 1) his membership in the Cleveland area chapter of the Hells Angels Motorcycle Club and/or 2) the activity of his counsel (Alan P. Caplan) in exposing alleged improprieties by the federal special investigative task force (the 'Cleveland Strike Force') in bringing charges against him. The demand for a special evidentiary hearing came during oral argument on Wortman's motion to dismiss on selective prosecution grounds. The trial judge remarked on the unusual nature of a third prosecution after mistrials in his experience. The government refused the court's invitation to proffer an explanation as to why it had decided to prosecute Wortman the third time. The court, nevertheless, ruled against Wortman's request for a further special evidentiary hearing or other means by which the government's reasons for a third prosecution could be discovered.
 
 
 5
 After plea negotiations failed, Wortman renewed his motion to dismiss on selective prosecution grounds, this time basing his renewed motion on what transpired during the course of the plea negotiations. A Cleveland Strike Force prosecutor had allegedly indicated a favorable disposition toward allowing the entering of an Alford (a plea of guilty without admitting the commission of the offense) plea by Wortman.[2] Officials in the Washington office of the Organized Crime and Racketeering Section of the Justice Department, on the other hand, allegedly rejected the proposed plea bargain.
 
 
 6
 At oral argument on this renewed motion to dismiss, the government rejected the court's invitation to produce the official[s] in Washington who were responsible for rejecting the Alford plea, and the trial judge expressed his own strong reservations about ever accepting an Alford-type plea bargain. Wortman's counsel countered by stating that he had personal knowledge of the Justice Department's acceptance of Alford pleas in other cases.[3] The trial judge again rejected Wortman's request for an evidentiary hearing on the selective prosecution issue.
 
 
 7
 Wortman claims that continued prosecution of the remaining indictment charges after the jury's finding of not guilty on most of the substantive counts at the second trial somehow constitutes misconduct on the government's part, particularly since he was a member of Hell's Angels and it was unusual for a third prosecution to take place in that court. He asks this court in the exercise of its supervisory power to set the conviction aside accordingly. We are unpersuaded by this claim, since there has been no showing of malicious, vindictive or unfounded action by the prosecution in this matter. Proceeding a third time under these circumstances is no indication of impropriety on the part of the government.
 
 
 8
 The argument about the government's supposed impermissible animus against the Hell's Angels does not rise above the level of bare assertion in this record. The brief on appeal adds some insight to the argument about possible Cleveland Strike Force animus against counsel Caplan. Wortman's counsel at oral argument before this court indicates that the Strike Force had impermissibly attempted to 'steer' Wortman's case to a particular judge rather than placing it in the usual 'blind-draw' lottery. In any event, the judge against whom Caplan protested did not try the case.
 
 
 9
 A district court is required to hold an evidentiary hearing on a claim of selective prosecution only after the defendant has made a prima facie showing by establishing a 'colorable entitlement' to dismissal. United States v. Hazel, 696 F.2d 473, 475 (6th Cir. 1983). In other words, "[a] hearing is necessary only when the motion alleges sufficient facts to take the question past the frivolous state and raises a reasonable doubt as to the prosecutor's purpose." Id. (quoting United States v. Larson, 612 F.2d 1301, 1304-05 (8th Cir. 1980) (emphasis added)). A defendant is entitled to dismissal based on a claim of selective prosecution once he shows (1) that others similarly situated were not proceeded against and that he has been singled out for prosecution, and (2) that the government's selection of defendant is invidious or in bad faith ('based upon such impermissible considerations as race, religion, or the desire to prevent the exercise of his constitutional rights'). Hazel, 696 F.2d at 474. In Wortman's bare assertions regarding the government's actions in this case we do not find sufficient facts to establish the 'colorable entitlement' that defendant must show in order to be entitled to a hearing. Wortman's allegations regarding the government's basis for the prosecution are mere conjecture, unsupported by sufficient factual allegations. Accordingly, in the absence of evidence that the defendant had been singled out and that the government's decision to prosecute was made in bad faith, the district court correctly declined to hold an evidentiary hearing on defendant's motion.
 
 II. COLLATERAL ESTOPPEL
 
 10
 This issue focuses on introduction of evidence tending to show that Wortman helped transfer a light anti-tank rocket weapon at a mini-storage warehouse during surveillance. At the second trial, the jury did not reach a verdict on the charge against Wortman of illegal possession of this particular weapon. The government then introduced evidence about transfer of this weapon at the mini-storage warehouse during the third trial on the conspiracy charge.
 
 
 11
 It is noted that the second jury had reached a not guilty verdict on possession of all the other weapons in which Wortman was alleged to be involved in transfering at that time and place. The same jury also found Wortman's alleged associate, Raymond Ribich, not guilty of all substantive possession counts and the conspiracy count.
 
 
 12
 Wortman argues that acquittal on the other nine substantive counts (and, by implication, Ribich's acquittal on all counts) authoritatively determined that Wortman was not present at the warehouse during the surveillance. He therefore argues that the government should not have been permitted to reintroduce evidence about this supposed occurrence during the third trial.
 
 
 13
 Other evidence was presented at the trial in question that defendant, Ribich, and a third member of the Hell's Angels organization came to the house of a girlfriend of a fellow member, Rothrock, who had just recently been slain. Wortman and his associates cleaned out Rothrock's belongings and all indicia of his Hell's Angels membership. That day a mini-storage warehouse bin was also rented by someone using a false name. Identifying evidence indicated that Wortman had rented the bin. Later that day Wortman and his co-defendant returned to the home which had been occupied by the deceased, entered the garage, and emerged carrying what appeared to be a bulky object wrapped in a green mover's quilt. In surveillance at the warehouse, government agents then observed two persons transferring objects from another bin to the recently rented one. The inference to be drawn from the latter testimony was that the cache of weapons discovered in the bin, purportedly rented by Wortman, including explosives and the anti-tank rocket covered with the green mover's quilt, were moved from a bin controlled by Rothrock to the bin rented by Wortman.
 
 
 14
 The girlfriend also testified, moreover, that she had accompanied Rothrock to the first bin and saw him place explosives there, and that Rothrock had called Wortman to bring him a key to get in that bin on occasion. Since Wortman and Ribich were found not guilty in connection with other weapons located in the second bin, which were the subject of substantive indictment charges, did the trial court commit reversible error in allowing the surveillance testimony at the third trial? Should the government have been held estopped to introduce this evidence?
 
 
 15
 The trial court refused to interpret the prior acquittals as conclusive determinations that Wortman did not participate in the transfer of any objects, including perhaps the anti-tank rocket, on the night in question. The surveilling agents could not identify the objects with any precision; they could only say that some objects were being moved into the bin Wortman assertedly had rented. A previous jury could thus have believed that Wortman was simply transferring non-contraband or contraband not described in the indictment with the possible exception of the anti-tank rocket.
 
 
 16
 We believe that there was no error demonstrated in the district court's ruling on admissibility of the contested evidence. Collateral estoppel was not appropriate to preclude the government's adducing evidence of Wortman's presence and knowledge about the anti-tank rocket and a conspiracy to possess it and to conceal it. A rational jury could have grounded its verdict in the second case upon an issue and upon circumstances other than that which Wortman sought to foreclose in the subsequent trial resulting in conviction. Ashe v. Swenson, 397 U.S. 436 (1970). Defendant failed to carry his burden of establishing that the earlier verdict 'necessarily determined in his favor the issues he seeks to foreclose from the jury's consideration on retrial.' United States v. Medina, 709 F.2d 155, 156 n.** (2d Cir. 1983) (emphasis in original); see also United States v. Garza, 754 F.2d 1202, 1209-1210 (5th Cir. 1985). Wortman, moreover, cannot gain collateral estoppel effect from a verdict favoring his co-defendant. Standefer v. United States, 447 U.S. 10 (1980).
 
 
 17
 Accordingly, we find no demonstrable error either in respect to the claim of selective prosecution or in respect to the questioned admission of evidence about Wortman's presence at the bin. The judgment of conviction is AFFIRMED.
 
 
 
 [1]
 The brief of appellant Wortman states that the jury informed the judge of a vote distribution of ten for conviction and two for acquittal on all charges. Appellant's Brief at 4
 
 
 [2]
 See North Carolina v. Alford, 400 U.S. 25 (1970). The sentence mentioned in negotiations was one year of probation in lieu of a suspended two year sentence
 
 
 [3]
 One of the cases recalled by the counsel purportedly involved a member of Hells Angels. If such an assertion were correct, it would seem to be inconsistent with defendant's argument that the Justice Department was refusing Wortman's plea bargain because of a constitutionally impermissible animus against the Hells Angels group