**ABU–HALEB, INC. d/b/a Miles Eagle Supermarket, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. C86–4292.

United States District Court, N.D. Ohio, E.D.

March 11, 1987.

Thomas M. Moroney, Russo & Moroney, Cleveland, Ohio, for plaintiffs.

William J. Kopp, Asst. U.S. Atty., Cleveland, Ohio, for defendant.

MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Abu-Haleb, Inc. d/b/a Miles Eagle Supermarket ("Abu-Haleb") and its owner, Mohammed Hamed, brought this action against the United States, Richard Lyng, Secretary of the United States Department of Agriculture, and Monroe Woods, Regional Administrator of the Food Nutrition Service ("FNS") seeking judicial review of the government's decision to suspend the store from participation in the federal Food Stamp Program under 7 U.S.C. § 2021. Pending before the Court is the government's partial motion to dismiss. Since matters outside the pleadings have been considered, the motion shall be treated as one for summary judgment under Fed.R. Civ.P. 56(c). For the reasons set forth below the motion for partial summary judgment is granted as to the claim for selective prosecution, and as to defendants Lyng and Woods on all claims.

Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1346.

I.

Title 7 U.S.C. § 2021 (1986) provides:

Any approved retail food store or wholesale food concern may be disqualified for a specified period of time from further participation in the food stamp program, or subjected to a civil money penalty of up to $10,000 for each violation if the Secretary determines that its

disqualification would cause hardship to food stamp households, on a finding, made as specified in the regulations, that such store or concern has violated any of the provisions of this chapter or the regulations issued pursuant to this chapter.

The statute is implemented by regulations found at 7 C.F.R. § 278.6 (1986) ("§ 278.6"). After conducting an investigation of plaintiff Abu-Haleb, the Department of Agriculture, FNS, disqualified Abu-Haleb from the Food Stamp Program for one year pursuant to § 278.6(e)(3)(ii), which provides:

> (e) *Penalties.* FNS shall take action as follows against any firm determined to have violated the Act or regulations. For the purposes of assigning a period of disqualification, a warning letter shall not be considered to be a sanction. A civil money penalty and a disqualification shall be considered sanctions for such purposes. The FNS regional office shall:
>
> \*　\*　\*　\*　\*　\*
>
> (3) Disqualify the firm for 3 years if it is to be the first sanction for the firm and the evidence shows that:
>
> (i) It is the firm's practice to commit violations such as the sale of common nonfood items in amounts normally found in a shopping basket and the firm was previously advised of the possibility that violations were occurring and of the possible consequences of violating the regulations; or
>
> (ii) Any of the situations described in paragraph (e)(2) of this section occurred and FNS had not previously advised the firm of the possibility that violations were occurring and of the possible consequences of violating the regulations; or

Among the situations described in § 278.6(e)(2) is:

> (i) It is the firm's practice to sell expensive or conspicuous nonfood items, cartons of cigarettes, or alcoholic beverages in exchange for food coupons;

Under Section V of FNS Instruction 744–9, "a firm's practice" may be established by three or more sales of major impermissible items, or by four or more transactions of common ineligible items.

## II.

Abu-Haleb is a corporation doing business as a retail supermarket known as Miles Eagle Supermarket. Its owner is Mohammed Hamed. The store is located in one of Cleveland's low income areas, and participates in the federal Food Stamp Program. In their complaint, Abu-Haleb and Hamed allege the following chronology:

¶ 12　By letter dated April 7, 1983, plaintiff was advised that its authorization to participate in the Food Stamp Program was withdrawn effective April 19, 1983. This matter was affirmed administratively and reviewed by the United States District Court, Judge Lambros, Case No. C83–3128. By consent decree of October 28, 1983 the court ordered payment of a civil money penalty in lieu of disqualification from the Food Stamp Program;

¶ 13　On April 10, 1986 plaintiff received a notice that its authorization to participate in the Food Stamp Program was being questioned. After a timely request for review was filed, plaintiff was notified on July 14, 1986 that a one year suspension was being imposed;

¶ 14　On July 18, 1986 plaintiff, through his attorney, filed a request for review. On September 23, 1986 plaintiff's attorney was notified that the review officer for the Food and Nutrition Service had affirmed the one-year penalty.

The complaint seeks judicial review of the government's decision, claiming that 1) it is without basis; 2) it is arbitrary, capricious and unreasonable; and 3) it is a selective prosecution of individuals of Arab descent. The government's motion for summary judgment is based on Abu-Haleb's third claim only.

In his affidavit, Lowell D. Holt, Officer-in-charge of the Cleveland Field Office of the FNS, states that Abu-Haleb was authorized to participate in the Food Stamp Program on January 29, 1980. Applications contain no information on ethnicity of the applicant, and are reviewed for past violations and business reputation only. Com-

pliance with the Food Stamp Program is monitored by advising the owner of potential consequences for violations of the program rules when complaints are received by the FNS or statistically excessive redemptions are reported. The procedure for investigation that is followed involves reporting these complaints or excessive redemptions to the FNS regional office in Chicago from which Compliance Branch personnel are dispatched to carry out the investigation. Holt states that most food stamp redemptions are made in Cleveland stores which are located in the inner city, and that "many of these stores have Arab owners".

Holt's affidavit also includes a summary of the statistics by the FNS for investigations held during the period relevant to this action:

> ¶ 11 A review of the store files in the Cleveland Field Office indicates that a total of 56 investigations in the field office area were requested during the period May 1, 1985, through April 30, 1986. Pursuant to these requests, a total of 56 investigations were started. Forty of these investigations have been completed. In 10 cases the results of the investigation were negative. In the other 30 cases, some type of penalty was imposed upon the store. Of those upon which a penalty was imposed, six have filed for judicial review. In the remaining 16 cases, the investigation is still ongoing or has been canceled because of a change in ownership or because the store went out of business. Since FNS does not request information as to the race, nationality, ancestry, or ethnic background of participating store owners, it would be conjecture for FNS to provide information concerning the racial or ethnic representation in the foregoing statistics.

### III.

Fed.R.Civ.P. 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

The nature of materials properly presented in a summary judgment pleading is set forth in Fed.R.Civ.P. 56(e):

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Hasan v. CleveTrust Realty Investors, Inc.*, 729 F.2d 372 (6th Cir.1984). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evi-

dentiary standards. Thus, in most civil trials the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* 106 S.Ct. at 2512. Although "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to defeat a summary judgment motion, the Court is not precluded from denying a summary judgment motion where it concludes that proceeding to trial is a better course. *Id.* 106 S.Ct. at 2512, 2514.

## IV.

### A.

In *United States v. Hazel*, 696 F.2d 473 (6th Cir.1983), the Sixth Circuit enunciated the standards for determining when an evidentiary hearing is required in a selective prosecution case. Following the holding of *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962), that "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation," *Hazel* first stated the *prima facie* elements of a selective prosecution claim. Adopting the test utilized by a majority of the circuits, the court held that a defendant asserting selective prosecution:

> bears the heavy burden of establishing, *at least prima facie*, (1) that while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, *and* (2) that the government's discriminatory selection of him has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent the exercise of his constitutional rights.

696 F.2d at 474–75 (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974)) (citing cases from the First, Fifth, Seventh, Eighth and Ninth Circuits and earlier Sixth Circuit decisions) (emphasis in original).

With respect to the required showing for an evidentiary hearing, the Sixth Circuit concluded:

> Therefore, it is only when this *prima facie* showing has been made and the defendant has proven a "colorable entitlement" to a dismissal for selective prosecution, that an evidentiary hearing should be held. A mere allegation that the exercise of First Amendment rights led to the prosecution does not mandate a full evidentiary hearing. Rather, "[a] hearing is necessary only when the motion alleges sufficient facts to take the question past the frivolous state and raises a reasonable doubt as to the prosecutor's purpose."

*Hazel*, 696 F.2d at 475 (quoting *United States v. Larson*, 612 F.2d 1301, 1304–05 (8th Cir.1980)) (emphasis in *Hazel*) (citation omitted).

### B.

In *Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), the Supreme Court reviewed a selective prosecution case from the Ninth Circuit, which utilized the same two-pronged test used in *Hazel*. *Id.* at 605, 105 S.Ct. at 1530. Its decision re-establishes the extremely high burden defendants must satisfy to establish even a *prima facie* case of selective prosecution.

Wayte was indicted for failing to register for the draft. He moved to dismiss the indictment, contending that he and other indicted nonregistrants were "vocal" opponents of the registration program who had been impermissibly targeted for prosecution because they exercised their first amendment rights. The district court ordered extensive discovery and, when the government refused to produce certain documents and witnesses, dismissed the indictment. It held that Wayte had established a *prima facie* case. The court stated that Wayte had satisfied the first prong—that others similarly situated had not been prosecuted for similar conduct—by showing that only "vocal" nonregistrants were prosecuted and that the government could have, but failed to, prosecute non-vocal nonregistrants. Then it held that Wayte

satisfied the second prong—discriminatory selection based on impermissible grounds—in three ways: 1) because a passive enforcement program prosecuting only vocal nonregistrants was "inherently suspect" and "vulnerable to the charge" that defendants were prosecuted "for their expression of ideas, a constitutionally protected right"; 2) because the government's awareness that a disproportionate number of vocal nonregistrants would be prosecuted under its system proved that Wayte was prosecuted because he exercised first amendment rights; and 3) involvement of high government officials in the prosecution strongly suggested impermissible motivation.

In reversing, the Ninth Circuit agreed that Wayte had satisfied the first prong (different treatment of others similarly situated) by showing that all indicted nonregistrants were vocal nonregistrants. However, it held that the second prong (discriminatory selection for prosecution based on impermissible grounds) could only be satisfied by a showing that the government focused its investigation on *Wayte* because of his protest activities. It then held that Wayte had presented no evidence of impermissible governmental motivation and, therefore, had failed to establish a *prima facie* case of discrimination.

The Supreme Court affirmed. Justice Powell noted preliminarily that "the Government retains 'broad discretion' as to whom to prosecute" and that "[j]udicial supervision" of "the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy". 470 U.S. at 607, 105 S.Ct. at 1531 (citations omitted). The Court then stated:

It is appropriate to judge selective prosecution claims according to ordinary equal protection standards. Under our prior cases, these standards require petitioner to show both that the passive enforcement system had a discriminatory effect and that it was motivated by a discriminatory purpose. All petitioner has shown here is that those eventually prosecuted, along with many not prosecuted, reported themselves as having violated the law. He has not shown that the enforcement policy selected nonregistrants for prosecution on the basis of their speech.

\* \* \* \* \* \*

" '[d]iscriminatory purpose' ... implies more than ... intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Mass. v. Feeney* ... 442 U.S. [256] at 279 [99 S.Ct. 2282 at 2296, 60 L.Ed.2d 870] [1979] ... In the present case, petitioner has not shown that the Government prosecuted him *because of* his protest activities. Absent such a showing, his claim of selective prosecution fails.

470 U.S. at 608–610, 105 S.Ct. at 1531–1532 (footnotes and citations omitted).

The Court then held that Wayte had failed to establish a *prima facie* case he was prosecuted because of his first amendment activities. It noted that an expansive reading of first amendment-based selective prosecution claims contained the potential for considerable disruption of law enforcement:

Under the petitioner's view, then, the Government could not constitutionally prosecute a self-reporter—even in an active enforcement system—unless perhaps it could prove that it would have prosecuted him without his letter. On principle, such a view would allow any criminal to obtain immunity from prosecution simply by reporting himself and claiming that he did so in order to "protest" the law. The First Amendment confers no such immunity from prosecution.

*Id.* at 614, 105 S.Ct. at 1534.

## V.

■ The question presently before this Court is whether Abu-Haleb has made a

*prima facie* showing of selective prosecution entitling him to discovery. In his brief in opposition, Abu-Haleb has put forth legal arguments, but no facts to support the allegation that the government selectively enforces its food stamp regulations against grocers of Arab descent. The burden of proof to make a *prima facie* case is a heavy one, since *Wayte* holds that a non-frivolous showing of both a discriminatory effect and a discriminatory purpose are necessary to support a hearing or discovery on the issue of selective prosecution. *Id.* at 623–624, 105 S.Ct. at 1539–1540 (Marshall, J., dissenting).

Abu-Haleb argues that *Wayte*, a case involving a claim of selective prosecution for exercising first amendment rights, is not applicable to selective prosecution based upon race or national origin. In support of his argument he cites several cases which pre-date *Wayte*. In fact, *Wayte* has been consistently applied by several circuits in cases alleging selective prosecution for racial or ethnic origin reasons. Typical of these is *United States v. Holmes*, 794 F.2d 345 (8th Cir.1986). In *Holmes*, a black defendant was indicted for knowingly disposing of property mortgaged to the Farmers Home Administration. Holmes argued that white farmers who allegedly disposed of their own mortgaged property in violation of the law were not subject to prosecution. The Eighth Circuit Court of Appeals held that Holmes had not made out a *prima facie* case that he was prosecuted selectively because of his race. Citing *Wayte*, the court held that even putting forth specific names of the white farmers did not make out a *prima facie* case where the government was able to determine that reasons existed for the failure to prosecute. *Id.* at 348. In addition, the Third, Fourth, and Seventh Circuits have followed *Wayte* in similar circumstances. *See Government of Virgin Islands v. Harrigan*, 791 F.2d 34 (3rd Cir. 1986) (no *prima facie* case of selective application of habitual criminal statute to racial minorities); *United States v. Greenwood*, 796 F.2d 49 (4th Cir.1986) (federal employee's claim of racially-based selective prosecution insufficient to support evidentiary hearing or discovery); *United States v. Kehm*, 799 F.2d 354 (7th Cir.1986) (no constitutional violation when a particular group of criminals in a drug smuggling ring, all Bahamians, are not prosecuted and a witness refuses to testify against them because of their nationality); *Singh v. Lamar University*, 635 F.Supp. 737 (E.D.Tex. 1986) (Asian Indian alleging first amendment protection did not show purposeful discrimination and thus did not make out a *prima facie* case). Thus, in light of the Supreme Court's holding in *Wayte*, Abu-Haleb has failed to establish a *prima facie* case of selective prosecution, and therefore this claim must be dismissed.

Further, the United States is the only proper defendant in a 7 U.S.C. § 2021 action. 7 C.F.R. § 279.10(a) (1986). Therefore, summary judgment must be entered in favor of defendants Lyng and Woods on all of Abu-Haleb's claims.

## VI.

Accordingly, the government's motion for partial summary judgment on the selective prosecution claim is granted and all of the individual defendants are dismissed, with prejudice.

IT IS SO ORDERED.