**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Batista CONTE, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Jacob SAMARIN, Defendant-Appellant.**

**Nos. 16170, 16171.**

United States Court of Appeals
Sixth Circuit.

Aug. 4, 1965.

Marvin A. Koblentz, Cleveland, Ohio, for appellant.

Nathaniel R. Jones, Asst. U. S. Atty., Cleveland, Ohio, for appellee, Merle M. McCurdy, U. S. Atty., Robert J. Rotatori, Asst. U. S. Atty., Cleveland, Ohio, on the brief.

Before WEICK, Chief Judge, MILLER, Circuit Judge, and MATHES, Senior District Judge.*

WEICK, Chief Judge.

Appellants Conte and Samarin were convicted by a jury in the District Court on six counts of an indictment charging them with devising a scheme to defraud purchasers of corporate bonds which had been stolen, forged and falsely made, and executing it by transmitting wire communications in interstate and foreign commerce, in violation of 18 U.S.C. § 1343. They were sentenced to five years' imprisonment on each count, to run concurrently. The appeal of Samarin was dismissed pursuant to a stipulation of counsel. Only the appeal of Conte was argued and submitted to us for consideration.

In February, 1959, a number of bonds of North Star Oil, Ltd., a Canadian corporation, disappeared from the vaults of its transfer agent, Toronto General Trust Bank, in Montreal, Canada. The bonds were payable to bearer but had not been counter-signed by an authorized official of the bank.

The indictment related to one hundred twenty of the bonds, valued at $60,000. The counter-signature of the transfer agent had been forged on the bonds.

Appellant Samarin approached Charles Vincent Cullinan in Cleveland, Ohio, in June or July, 1962, for the purpose of selling these bonds. Cullinan finally agreed to purchase the bonds from Samarin for $45,000., of which $10,000. was to be paid in cash, and the balance of $35,000., less a finder's fee to be retained by Cullinan, was to be paid within twenty days.

Cullinan arranged to borrow the $10,-000.-down payment from Dominic Visconsi, a wealthy business man in Cleveland. Visconsi contacted the Cleveland office of Francis I. duPont Co., brokers, to ascertain the value and marketability of the bonds. Teletype messages were sent back and forth between the Cleveland office and the New York office of duPont Co., which resulted in the latter office making arrangements with Davidson & Co., brokers of Toronto, Canada, for the sale of the bonds for $49,874. Cullinan intended to purchase the bonds from Samarin and to sell them at a profit through duPont Co. The bonds were selling at a discount at that time.

Samarin went to Toronto to obtain the bonds. While there he had several long distance telephone conversations with Cullinan, who was in Cleveland. Some of the calls were placed by Samarin from his hotel room in Toronto, and others were placed by Cullinan. Conte was in Toronto when long distance telephone conversations between Samarin and Cullinan took place. He and Samarin stayed at the same hotel. The telephone conversations resulted in Cullinan going to Toronto to close the purchase, traveling in a private plane belonging to Visconsi.

Several days after Cullinan's arrival in Toronto, Samarin and Conte went to his hotel room. Conte had the bonds in two shopping bags. Conte delivered the bonds to Cullinan, who paid him $10,000. in cash. Samarin gave Cullinan a receipt for the cash and an assignment of and warranty of title to the bonds. Cullinan then took the bonds and delivered them to the brokerage office of Davidson & Co. in Toronto and secured a check in the amount of $49,874., payable to Fran-

---

* William C. Mathes, Senior District Judge of the United States District Court for the Southern District of California. sitting by designation.

cis I. duPont Co. Davidson & Co. later contacted the transfer agent bank and learned that the bonds had been stolen. It then stopped payment on its check to duPont Co.

Neither Samarin nor Conte made restitution to Cullinan for the $10,000.-down payment.

In the indictment the use of the wires in sending the teletype and telephone messages was charged in separate counts.

■ Conte contended that the offense charged against him was committed in Canada, and that the District Court in Northern Ohio had no jurisdiction. The scheme, however, was devised in Cleveland and in executing it wires were used in sending teletype messages to New York, and from New York to Cleveland. Telephone calls were made from Cleveland to Toronto and from Toronto to Cleveland. The victim resided in Cleveland. In our opinion the District Court had jurisdiction. United States v. Whiting, 308 F.2d 537 (C.A.2, 1962), cert. denied Crowe v. United States, 372 U.S. 909, 83 S.Ct. 722, 9 L.Ed.2d 718; United States v. Fassoulis, 185 F.Supp. 138 (S.D.N.Y.1960) affd. 293 F.2d 243, cert. denied 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed. 2d 134.

Conte further contended that the evidence was insufficient to support the verdict. He argued that he had no knowledge that the wires would be used in the illegal transmission of messages in interstate and foreign commerce. He alleged that his participation in the scheme occurred subsequent to the use of the wires and after it had been devised.

■ In considering this issue the evidence, as well as inferences, must be viewed in the most favorable light to the Government. Battjes v. United States, 172 F.2d 1 (C.A.6, 1949).

■ Conte had possession of the stolen bonds. He carried them in shopping bags to the hotel room of Cullinan in Toronto, where he received the cash down payment of $10,000. The jury could infer from this evidence that both Conte and Samarin were participants in the scheme to defraud. At least Conte was an aider and abettor and was therefore equally guilty as a principal. Roberts v. United States, 226 F.2d 464 (C.A.6, 1955), cert. denied 350 U.S. 935, 76 S.Ct. 307, 100 L.Ed. 817.

The Court charged the jury in this respect as follows:

"You are instructed, as a matter of law, that a person causes a message to be transmitted if he does an act with knowledge that the use of interstate or foreign wires for the transmission of messages will follow in the ordinary course of business, or where such use can reasonably be foreseen even though not actually intended.

"You are further instructed that a person who is a party to an interstate or foreign [452] telephone conversation is transmitting sounds in interstate or foreign commerce even though the call may have been placed by another person calling him.

"I further charge you that if you find from the evidence that the Defendants were acting together to carry out a scheme or artifice to defraud and that the acts of one caused an interstate or foreign transmission of messages in violation of the statute, then both would be responsible for such act. When a scheme to defraud is shared in by two or more, the act of each party in furthering the scheme is the act of and is attributed to each party of the scheme."

■ In our judgment this was a correct statement of the law. It was not necessary for the Government to prove that Conte or Samarin actually sent the messages over the wires. It is sufficient if the messages were the foreseeable result of their acts. United States v. Houlihan, 332 F.2d 8 (C.A.2, 1964) cert. denied 379 U.S. 828, 85 S.Ct. 56, 13 L.Ed.2d 37; Roberts v. United States, supra.

■ In any event, Count VIII was sustained by abundant evidence. Conte and Samarian were in the same hotel in Tor-

onto at the time of the long distance telephone conversation between Cullinan and Samarin on August 10, which is charged in that count. Since Conte's conviction can be sustained on Count VIII and the sentences were to run concurrently, the validity of the conviction on the other counts need not be considered. Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); United States v. Salter, 346 F.2d 509 (C.A.6, 1965).

■ Appellant presented a further claim that he should have been granted a mistrial because of a prejudicial newspaper article. There was no evidence that any of the jurors read the article or knew its purport. It could not possibly have prejudiced Appellant.

Affirmed.