976 F.2d 734
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles Alan LINDSEY, Defendant-Appellant.
 No. 91-5727.
 United States Court of Appeals, Sixth Circuit.
 Sept. 14, 1992.
 
 Before KENNEDY and NATHANIEL R. JONES, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant, Charles Alan Lindsey, appeals his jury conviction and his sentence on five counts of wire fraud. For the reasons that follow, we affirm.
 
 
 2
 * This case arises out of Lindsey's efforts to obtain loans on behalf of Dr. Alan Barber, M & M Retail Outlets, Inc., Triad Holding Corporation, Industrial Supply Company, and Andrew Conner. Although the financing transactions for each of these parties differed in some respects, the government sought to prove that they shared one common characteristic: Lindsey falsely represented himself to each party as an international money broker. In other words, he falsely represented to his five victims that he was in the business of obtaining loans for people through his overseas contacts, and he falsely claimed that he had successfully funded projects in the past.
 
 
 3
 Under the version of the facts proved at trial, Lindsey would review a proposal and then contend to the victim that the suggested loan amount was too small. He claimed that he would only be interested in a larger project--that is, if the victim sought a larger loan. Lindsey claimed that these loans could be obtained in a relatively short period of time. The interest rates would be low, there would be no repayment of principal, and the victims would not be personally liable. When asked for references, Lindsey occasionally refused to provide them, claiming that his transactions, sources for loans, and clients were confidential. In each case, he requested and received an advance fee, ranging from $14,000 to $155,000.
 
 
 4
 Lindsey never provided any of the victims with the loans that he had promised. He always maintained, even long after he had promised to deliver the loans, that he was working on them and would deliver. Furthermore, he made himself judgment-proof by placing his assets in the names of others and by moving his assets overseas. Lindsey maintained at trial and maintains on appeal that his dealings with each of the above-mentioned parties were legitimate business transactions.
 
 
 5
 Lindsey was initially indicted in the United States District Court for the Eastern District of Tennessee on September 12, 1990. He was charged with five counts of wire fraud in violation of 18 U.S.C. § 1343 (1990). On December 11, 1990, the government filed a superseding indictment, which charged the same five counts--one for each alleged victim.
 
 
 6
 The trial lasted four days, beginning on January 18, 1991, and ending on January 24, 1991. The court denied the defendant's Motion for Judgment of Acquittal made following the close of the government's evidence on January 23, 1991, and again denied the Motion for Judgment of Acquittal made following the close of all the evidence on January 24, 1991. The defendant was found guilty on all five counts.
 
 
 7
 On April 16, 1991, the court sentenced Lindsey to five years of imprisonment on counts one, two and three, which were determined to be pre-federal sentencing guidelines counts, and sentenced Lindsey to twenty-six months of imprisonment on counts four and five, which fell under the Sentencing Reform Act of 1984. In addition, Lindsey was sentenced to three years of supervised release, and was ordered to pay $250 in special assessments and $386,233.31 in restitution. On April 18, 1991, Lindsey filed this appeal.
 
 II
 
 8
 Lindsey contends that the evidence produced at trial was insufficient to support his conviction. The standard of review for insufficient evidence claims is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). In addition, circumstantial evidence alone is sufficient to sustain a conviction, and this evidence need not "remove every reasonable hypothesis except that of guilt." United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984), cert. denied, --- U.S. ----, 111 S.Ct. 71 (1990). Furthermore, the question of fraudulent intent is for the jury. See United States v. Van Dyke, 605 F.2d 220, 225 (6th Cir.) (addressing the analogous mail-fraud statute), cert. denied, 444 U.S. 994 (1979).
 
 
 9
 In the instant case, there was ample evidence that Lindsey induced each of his victims with false and fraudulent representations to pay him an advance fee. The key misrepresentation was that he had been successful in the past in obtaining financing. No evidence was introduced at trial to show that Lindsey had ever been successful. Thus, a rational jury could find that he falsely led his victims to believe that he had access to hundreds of millions of dollars from overseas sources.
 
 
 10
 The evidence also supported the view that Lindsey promised what he knew he could not deliver. In each case, Lindsey represented that he could actually obtain loans in larger amounts than were sought. He told Dr. Barber that instead of $4 million he could get $5 million. He told Frank Grassie, an M & M executive, that instead of $3 million he could get $6 million to $10 million. He told Reg Saxton, owner of Triad Holding Corporation, that instead of $8 million he could get $27 million. He told Eugene Harrell, owner of Industrial Supply, that instead of $3 million, the minimum loan he could obtain was $5 million. Finally, after dragging out Conner for months and months, Lindsey told him that instead of the $8 million he originally wanted, he could get him $100 million.
 
 
 11
 When some victims asked for references, he told them that his sources of funds were confidential and that he could not disclose them. When his victims asked what the delay was in funding, he always had some excuse. He told Dr. Barber, for example, that the banks were closed due to snowstorms in Switzerland. He told Saxton that he needed a listing of AAA tenants. Accordingly, there was ample evidence to show that Lindsey knew he could not deliver that which he had promised. The jury was entitled to infer, therefore, that Lindsey knew he could not get anyone loans. If he knew that he could not obtain loans for his clients, he was acting in bad faith when he took the clients' money as advance fees to get them loans. The jury was entitled to infer that the "best efforts" clause in three of the five contracts[1] was not included in good faith, but was for the purpose of deception and giving Lindsey a defense.
 
 
 12
 The instant case is similar to many other cases, notably United States v. Ellzey, 874 F.2d 324 (6th Cir.1989). Therein, we upheld convictions of mail fraud, wire fraud, conspiracy, and interstate transportation of securities obtained by fraud. One defendant in that case, Paul W. Cochran, used an advance-fee scheme to prey upon farmers facing foreclosure. Cochran "represented himself to be successful in securing refinancing loans for farmers." Id. at 326. Cochran would have a victim sign a contract providing for payment to him of a percentage of any loan he secured. Although the percentage was not due until the loan was placed in escrow, Cochran later had the victims sign the amendments requiring payment of the fee upon receipt of a "loan commitment letter that approved the farmer's loan application and indicated the loan funds were forthcoming." Id. When the loans were not forthcoming, the defendants provided "lulling letters" to the anxious farmers. Id. at 327.
 
 
 13
 Like Lindsey, the defendants in Ellzey claimed that there was insufficient evidence of intent to defraud, because they had performed legitimate work, and it did not matter whether the loans were funded or not. Id. They also defended on the ground that they believed that they were working with a legitimate lender. Id. at 328. Nevertheless, the court held that a rational trier of fact could find there was sufficient evidence to convict the defendants under those circumstances. These were simply jury questions. Similarly, it was for the jury to decide in this case whether Lindsey acted in good faith or with intent to defraud.
 
 
 14
 Other circuits have upheld advance-fee scheme convictions on facts even more similar to Lindsey's scheme. Cf. United States v. Lanier, 838 F.2d 281, 283 (8th Cir.1988) (defendant represented that he could obtain $100 million no-payback loans for advance fees of $25,000 to $50,000); United States v. Robinson, 774 F.2d 261, 265 (8th Cir.1985) (defendant claimed that he was an international financier and could provide loans obtained by overborrowing on other, more substantial loans, for an advance fee of $3500); United States v. Block, 755 F.2d 770, 772-73 (11th Cir.1985) (defendants claimed to be successful money brokers and took an advance fee for collateral to obtain a loan from overseas sources); United States v. Tzakis, 736 F.2d 867, 869 (2d Cir.1984) (series of schemes in which defendant claimed to have access to billions of dollars and to have previously funded many loan projects; schemes included advance fees for low-interest loans that were never funded). Based upon the other cases in this area of jurisprudence, there was sufficient evidence for the jury to conclude that Lindsey was guilty of fraud.
 
 III
 
 15
 Lindsey claims next that his prosecution is barred by the five-year statute of limitations of 18 U.S.C. § 3282 (1985). Lindsey was originally indicted on September 12, 1990. The indictment alleged a scheme to defraud that ran from February 1985 to December 1985. The only incident alleged to occur after September 12, 1985, was a telephone communication between Lindsey and Barber on October 9, 1985. Lindsey argues that this conversation cannot provide the basis for the government's prosecution, because Barber called Lindsey, not vice versa.
 
 
 16
 As a threshold matter, the parties are correct in their tacit assumptions that the statutory period is measured from the original indictment, and that the five-year period is measured from the last act in furtherance of the conspiracy. United States v. Lash, 937 F.2d 1077 (6th Cir.), cert. denied, 112 S.Ct. 397 (1991) and 112 S.Ct. 943 (1992). Lindsey's argument regarding whether he must have initiated the telephone call, however, is wholly without merit: " '[A] party to an interstate or foreign ... telephone conversation is transmitting sounds in interstate or foreign commerce even though the call may have been placed by another person calling him.' " United States v. Conte, 349 F.2d 304, 306 (6th Cir.) (quoting the district court's instructions), cert. denied, 382 U.S. 926 (1965). Accordingly, the statutory period may be measured from the October 9, 1985, telephone conversation, and the prosecution was timely.
 
 IV
 
 17
 Lindsey objects to the admission of the testimony of Dave Prickett. Prickett testified that he, as attorney for a company based in Kansas, had obtained a judgment against Lindsey in 1984. Yet, despite six years' effort, he was unable to collect the judgment. Lindsey argues that Prickett's testimony was irrelevant and more prejudicial than probative, and that it constituted improper character evidence. We review evidentiary rulings to determine whether the district court erred; the effect of an error is measured against the standard of Rule 103. See Fed.R.Evid. 103. In areas committed to the discretion of the district court--such as determinations of relevance made under Rule 401, and balancing the probative value against the prejudicial effect under Rule 403--we will find an error only if the district court abused its discretion. See United States v. Moore, 917 F.2d 215, 233 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1590 (1991).
 
 
 18
 The indictment charged that, at all material times, Lindsey placed his assets in the names of other persons in order to make himself judgment-proof. Given that Prickett's unsuccessful efforts to collect on a judgment are probative of the allegation in the indictment, the evidence was relevant in that respect. More importantly, the evidence was relevant to show intent to defraud.[2]
 
 
 19
 Any prejudicial aspect of the evidence arises because the evidence is probative of Lindsey's intent to defraud. Lindsey does not explain how evidence of efforts to make oneself judgment-proof have the potential to inflame the passions of the jury so as to suggest a verdict based on impermissible grounds. We are sensitive, however, that the testimony tended to be overly long and cumulative--thus perhaps tending to portray Lindsey as someone who did not pay his debts. Nonetheless, the jury was entitled to hear evidence relevant to deciding whether Lindsey's efforts constituted a legitimate attempt to shield himself from potential liability arising from his high-risk financing ventures or, rather, demonstrated his intent to engage in fraud. Accordingly, the district court did not abuse its discretion in refusing to exclude the evidence as substantially more prejudicial than probative.
 
 V
 
 20
 Lindsey argues that the district court erred in finding that the conspiracy alleged in counts four and five extended beyond November 1, 1989, so as to invoke that version of the guidelines. A district court's factual findings will be accepted unless they are clearly erroneous, United States v. Luster, 889 F.2d 1523, 1525 (6th Cir.1989), and we give "due deference" to the sentencing court's application of the guidelines to the facts, 18 U.S.C. § 3742(e) (1988).
 
 
 21
 Under the indictment, the offenses charged in counts four and five allegedly continued at least until September 1990. When the scheme ended was a factual determination for the court. In its judgment, the district court adopted the factual findings and guideline applications of the presentence report, which concluded that the scheme did continue beyond November 1, 1989. The court stated at sentencing that "from the entire totality of the ... record, the court finds that it did go on past November." J.A. at 394. Insofar as the district court adopted the findings of fact in the presentence report and heard substantial evidence at trial that the defendant was still maintaining that he could obtain financing, the defendant's technical argument that the district court made a summary ruling without making the required factual findings is without merit.
 
 VI
 
 22
 Lindsey's objection to the district court's order of restitution relates to a $25,000 transfer from Harrell to the First Boston Bank. At trial, Harrell testified that, to his best recollection, Lindsey had solicited the $25,000. No evidence was presented to contradict Harrell's best recollection as to the reason why he sent Lindsey the $25,000. In the presentence report, the probation officer included the $25,000 in the amount of restitution, and the district court approved this finding as part of its global adoption of the presentence report. Insofar as Lindsey's only objection is that Harrell was not certain, we have no basis to find that the district court clearly erred in including the $25,000.
 
 VII
 
 23
 For the foregoing reasons, Lindsey's conviction and sentence are AFFIRMED.
 
 
 
 [1]
 Grassie and Saxton did not allow Lindsey to include such a clause in their contracts
 
 
 [2]
 This same reason explains why Prickett's testimony is not improper character evidence within the meaning of Federal Rule of Evidence 404(b)